THEODORE L. VON DORN, PLAINTIFF IN ERROR AND
APPELLANT, V. FRED MENGEDOHT ET AL., DE-
FENDANTS IN ERROR AND APPELLEES.

FILED JUNE 26, 1894.  No. 6278.

1. **Damages for Breach of Builder's Contract.** Where a
contractor agrees with the owner of real estate to furnish the
material and labor and erect for him an improvement thereon,
and such contractor voluntarily abandons the work before com-
pletion, the owner may charge the contractor with (a) the neces-
sary costs of completing the improvement as the contractor
agreed to complete it, (b) the amount of all payments made to
the contractor on the contract, (c) the amount of all valid liens
on the real estate for labor and material furnished the contractor
and used by him in such improvement, and (d) the amount of
actual damages the owner has sustained by reason of the con-
tractor's default. The difference between the total of these
items and the contract price is the measure of damages of both
the owner and contractor. If such total exceeds the contract
price, such excess is the amount the owner may recover of the
contractor. If the contract price exceeds such total, such excess
is the amount the contractor may recover from the owner.

2. **Builders' Contracts:** TERMINATION: PARTIAL PERFORM-
ANCE: COMPENSATION OF CONTRACTOR. Where such a contract
exists and the owner rightfully terminates the same by virtue
of some provision therein authorizing him to do so upon the
happening of certain contingencies, then the contractor is en-
titled to recover from the owner the actual benefit he has re-
ceived from the contractor's partial performance; and this is
found by ascertaining the reasonable worth of such partial per-
formance appropriated or received by the owner at the time of
such receipt or appropriation, and deducting therefrom payments
made to the contractor, and the actual damages, if any, the
owner has sustained by the contractor's default, if he has made
one.

3. ———: WRONGFUL TERMINATION BY CONTRACTOR: MEASURE
OF DAMAGES. Where such a contract exists and the owner
wrongfully terminates the same or the contractor's employment
thereunder before the completion of the improvement, the con-
tractor's measure of damages is the reasonable value of his par-
tial performance increased by all actual damages sustained by

him by reason of the owner's unjustifiable termination of the contract.

4. **Mechanics' Liens:** SKILLED AND UNSKILLED LABOR. The mechanics' lien law of this state makes no distinction between skilled and unskilled labor, and its policy is to insure to both classes remuneration for whatever they may do towards increasing the value of an owner's real estate by the erection of improvements thereon.

5. ———: CLAIM OF ARCHITECT. An architect, who furnishes drawings and plans for an improvement on real estate, and superintends the erection of such improvement in accordance with such plans, in pursuance of a contract with the owner, is entitled to a lien upon such improvement and the real estate upon which it is situate upon compliance with the mechanics' lien law of the state.

6. **Woman as Notary Public.** There is nothing in our constitution or laws that prohibits a woman from holding the office of notary public.

7. ———. The right of a woman to hold the office of notary public when she has been appointed and commissioned to such office by the governor can only be inquired into in a suit or proceeding brought against her for that purpose.

8. **New Trial:** NEWLY DISCOVERED EVIDENCE. A motion for a new trial on the ground of newly discovered evidence should be overruled, even if the evidence alleged to be newly discovered is competent under the pleadings, when it appears that the witness, by whom it is proposed to prove the facts alleged to be newly discovered, testified on the trial of the case, was examined by the applicant for a new trial, and no effort was made at that time to elicit the facts claimed to be newly discovered evidence. *Brandt v. Fitzgerald*, 36 Neb., 683, followed.

9. **Judgments:** MOTION FOR NEW TRIAL: SUPERSEDEAS. The pendency of a motion for a new trial does not supersede a decree or judgment rendered or stay the execution thereof.

10. **Judicial Sales:** NOTICE. A judicial sale occurred on the 25th of April. The first publication of the notice of such sale was made on the 21st of March. As thirty days intervened between the date of the first publication and the date of the sale, *held*, sufficient. *Carlow v. Aultman,* 28 Neb., 672, followed.

ERROR AND APPEAL from the district court of Douglas county. Heard below before IRVINE, J.

The facts are stated by the commissioner.

*Kennedy, Gilbert & Anderson,* for plaintiff in error and appellant:

The architect was not entitled to a mechanic's lien. (Comp. Stats., secs. 1, 3, ch. 54; *Bank of Pennsylvania v. Gries,* 35 Pa. St., 423; *Price v. Kirk,* 90 Pa. St., 47; *Bush v. Able,* 90 Pa. St., 153; *Foushee v. Grigsby,* 12 Bush [Ky.], 75; *Pennsylvania & D. R. Co. v. Leuffer,* 84 Pa. St., 168.)

Under the laws of Nebraska a female is not eligible to the office of notary public. (Comp. Stats., sec. 1, ch. 60; *Robinson's Case,* 131 Mass., 376; *Bradwell v. State of Illinois,* 16 Wall. [U. S.], 130.)

*G. W. Covell,* also for plaintiff in error and appellant.

*J. W. West* and *Estabrook & Davis, contra:*

Plaintiff was not entitled to a new trial on the ground of newly discovered evidence, for the reason that the proposed witnesses were sworn on the hearing, and the plaintiff had an opportunity to examine them. (*Fitzgerald v. Brandt,* 36 Neb., 683.)

The notice of judicial sale was sufficient. (*Carlow v. Aultman,* 28 Neb., 672.)

The architect is entitled to a lien. (Phillips, Mechanics' Liens [2d ed.], 158, and authorities cited; *Knight v. Norris,* 13 Minn., 473; *Parker v. Bell,* 7 Gray [Mass.], 432.)

RAGAN, C.

November 3, 1890, Theodore L. Von Dorn owned certain real estate in the city of Omaha and on that date a contract in writing was entered into between him and Frederick Mengedoht and Adam Feichtmayer, copartners, by the terms of which they, in consideration of $18,540 to be paid them, agreed to furnish all material and labor

and construct for Von Dorn a building on his real estate, the same to be completed by April 1, 1891. This contract, amongst other things, provided that all material and labor used in the construction of such building should be first-class in every respect; that the building should be constructed according to certain plans and specifications made part of the contract; that "the contractor shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of James McDonnell, architect, acting as agent of said owner, all the works, * . * * agreeably to the drawings and specifications made by the said architect;" that the architect, or his representative, should superintend the work; that should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of material of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, then, if the architect should certify that such refusal, failure, or neglect of the contractors was a sufficient reason therefor, that the owner should be at liberty to terminate the employment of the contractors and enter upon the premises, take possession of and complete the work. The contractors at once entered upon the performance of said contract and furnished a large amount of labor and material towards the construction of the building they had agreed to erect. Before April 1, 1891, Von Dorn discharged McDonnell as architect and superintendent and appointed one Field in his place; and having obtained a certificate from him to the effect that the material being used by the contractors in the erection of the building was not of the character or quality called for by the contract, and that the building was not being erected according to the plans and specifications, Von Dorn terminated the employment of said contractors, took possession of and finished the building himself. One Specht brought this suit in the district court of Douglas county to have established and foreclosed against Von Dorn's property a

mechanic's lien which he claimed for certain labor and materials furnished by him to the contractors, and used by them in the partial construction of Von Dorn's building. Von Dorn and wife, the contractors, McDonnell, and a large number of material-men were made defendants. The controversy here, however, concerns only Von Dorn, Mengedoht, and McDonnell. Mengedoht, having succeeded by assignment to all the rights of Mengedoht & Feichtmayer, copartners, filed an answer in the nature of a cross-bill, claiming judgment against Von Dorn and a lien upon his real estate for the value of the labor and materials furnished by Mengedoht & Feichtmayer under the contract of November 3, 1890. McDonnell also filed an answer in the nature of a cross-petition, claiming judgment against Von Dorn and a lien on his real estate for services as architect and superintendent of the premises. The answer of Von Dorn to the cross-petition of Mengedoht and the reply of the latter thereto put in issue between them the following questions of fact: First—Were the labor and materials furnished by Mengedoht & Feichtmayer, toward the construction of the Von Dorn building, of the character and quality called for by the contract? Second—Was the building, so far as completed, erected according to the plans and specifications? Third—Were Mengedoht & Feichtmayer, at the time Von Dorn terminated their employment, able, ready, and willing to complete the building according to their contract? In other words, was the termination of Mengedoht & Feichtmayer's employment by Von Dorn wrongful? The answer of Von Dorn to the cross-petition of McDonnell and the latter's reply thereto made this issue of fact, viz., was the discharge of McDonnell by Von Dorn wrongful? The district court referred the case to an able lawyer and two skilled builders as referees. These referees found all the issues of fact and law in favor of Mengedoht & Feichtmayer and against Von Dorn, and duly reported the same to the district court. Von Dorn

38

filed exceptions to the report, which were overruled, and judgment entered according to the findings and conclusions of the referees. The property was advertised and sold and the sale confirmed. Von Dorn brings the judgment rendered against him in favor of Mengedoht and McDonnell here on error, and from the decree of the district court confirming the sale made to satisfy the mechanics' lien judgments he appeals.

We will first dispose of Von Dorn's petition in error.

1. The first alleged error is assigned in the following language: "That in the hearing of said cause below divers and sundry errors occurred in the introduction of evidence notwithstanding the objections of the plaintiff in error, which evidence was immaterial, irrelevant, incompetent, and prejudicial to the plaintiffs in error, and excepted to by plaintiff in error at the time; all which fully appears in the bill of exceptions on file in this court." This assignment of error is too indefinite for review. We cannot look through a record for the purpose of ascertaining if it contains error. If a litigant is of opinion that a ruling of the district court was erroneous and prejudicial to him, he must set out in his petition in error the precise action of the district court which he claims was erroneous.

2. The second error is like unto the first, and assigned in substantially the same language, and what has already been said disposes of that assignment.

3. The third and fourth assignments of error are, in substance, that the findings of the referees are unsupported by sufficient evidence. The evidence as to the character of the material used and the labor performed by the contractors in their partial construction of Von Dorn's buildings, and the evidence as to the manner in which the work was done, —that is, as to whether it corresponded to the plans and specifications,—was conflicting. Two of the referees who passed upon this evidence were skilled builders, and the other referee was an able lawyer who had filled the office

of judge of the district court for a number of years.   It
is not claimed that either of these men were incompetent
or partial.   They heard and saw the witnesses testify.
They examined the work that had been done by the con-
tractors; and two of these referees at least were, by train-
ing and profession, possessed of qualifications for passing
a more correct judgment upon the character of the work
and the materials used therein than we are.   These referees
were far more competent to weigh the evidence before them
and to say what conclusions such evidence warranted than
we are; and a careful reading of the testimony in the case
satisfies us that the findings of fact, and each of them, made
by the referees are abundantly supported by the evidence.

4. The fifth assignment of error is that the judgment of
the district court is contrary to the law of the case.   We
shall first examine this assignment with reference to the
judgment in favor of Mengedoht.   The argument, in effect,
is that the referees in the district court adopted and applied
an erroneous measure of damages in the controversy between
Von Dorn and Mengedoht.   The referees found that while
Mengedoht & Feichtmayer were prosecuting the work of
erecting the building according to their contract, and were
ready, able, and willing to so complete it, that Von Dorn
wrongfully terminated their employment and refused to per-
mit them to complete the work.   What, then, was Menge-
doht's measure of damages?   This question generally arises
in suits growing out of contracts of the character of the one
involved in this controversy in either one of three ways, viz.,
where the contractor voluntarily abandons the work, where
the owner wrongfully refuses to permit the contractor to
perform, and where the owner rightfully terminates the
contract or the contractor's employment by virtue of some
provision in the contract authorizing him to do so upon
the arising of certain contingencies.   The rules as to the
measure of damages in such suits, between the owner and
the contractor, in the class of cases just stated are as follows:

First—Where a contractor agrees with the owner of real estate to furnish the material and labor and erect for him an improvement thereon, and such contractor voluntarily abandons the work before completion, the owner may charge the contractor with (a) the necessary costs of completing the improvement as the contractor agreed to complete it, (b) the amount of all payments made to the contractor on the contract, (c) the amount of all valid liens on the real estate for labor and material furnished the contractor and used by him in such improvement, and (d) the amount of actual damages the owner has sustained by reason of the contractor's default. The difference between the total of these items and the contract price is the measure of damages of both the owner and contractor. If such total exceeds the contract price, such excess is the amount the owner may recover of the contractor. If the contract price exceeds such total, such excess is the amount the contractor may recover of the owner. Second—Where such a contract exists, and the owner rightfully terminates the same by virtue of some provision authorizing him to do so upon the happening of certain contingencies, then the contractor is entitled to recover from the owner the actual benefit he has received from the contractor's partial performance; and this is found by ascertaining the reasonable worth of such partial performance appropriated or received by the owner at the time of such receipt or appropriation, and deducting therefrom payments made to the contractor, and the actual damages, if any, the owner has sustained by the contractor's default, if he has made one. Third—But where such a contract exists and the owner wrongfully terminates the same or the contractor's employment thereunder before the completion of the work, the contractor's measure of damages is the reasonable value of his partial performance increased by all actual damages sustained by him by reason of the owner's unjustifiable termination of the contract. The referees found that the just and reasonable value of the labor done

and materials furnished by Mengedoht & Feichtmayer towards the erection of the building—that is, the reasonable value of their partial performance—was $14,224, and for this sum the court gave Mengedoht judgment and a lien on the real estate and building of Von Dorn. This was correct. If there had been a finding supported by competent evidence that Mengedoht & Feichtmayer had sustained any other damages by reason of Von Dorn's wrongfully discharging them, they would have also been entitled to the amount of such damages; and it seems that such damages would have been the profits they would have made by the performance of their contract had they been allowed to complete the same.

Is the judgment in favor of McDonnell contrary to law? The referees found that by the contract between Von Dorn and McDonnell the latter was employed as an architect to prepare the plans, drawings, and specifications for the building and to superintend the construction of the same; that Von Dorn wrongfully discharged him, and that in pursuance of his contract he performed labor and services towards the erection of said building as were of the just and reasonable value of $574.39, and that he was entitled, under the mechanics' lien law of the state, to a lien upon the real estate and the building of Von Dorn to secure its payment. This finding of the referees was approved by the court and McDonnell was given a judgment for the amount found due him by the referees and a mechanic's lien upon Von Dorn's property. The argument now is that this judgment of McDonnell's is contrary to law, because services performed by an architect in making plans, drawings, and specifications for an improvement on real estate and in superintending the construction of such improvement are not labor, within the meaning of section 1, chapter 54, Compiled Statutes, 1893, the mechanics' lien law. That section is as follows: "Any person who shall perform any labor  *  *  *  for the erection  *  *  *  of any.

house  *  *  *  or building  *  *  *  by virtue of a
contract  *  *  *  with the owner thereof  *  *  *
shall have a lien to secure the payment of the same upon
such house,  *  *  *  building,  *  *  *  and the lot
of land upon which the same shall stand," upon comply-
ing with the other requirements of the statute. There
is some conflict in the reported decisions as to whether
the services of an architect in drawing plans and specifica-
tions for an improvement on real estate and superintending
the construction of such improvement are labor within the
meaning of such a statute as this. It has always been the
rule of this court to give this statute a liberal construction,
and we see no good reason why we should depart from that
rule in the present instance. The statute makes no dis-
tinction between skilled and unskilled labor, and its policy
is to insure to both classes remuneration for whatever they
may do towards increasing the value of an owner's real
estate by the erection of improvements thereon. To make
drawings, plans, and specifications for an improvement
upon real estate and to superintend its erection in accord-
ance with such plans and specifications are labor, within
the ordinary meaning of that term, as much so as the
painting, decorating, or polishing the floors of a building
would be. We think, therefore, that an architect who fur-
nishes drawings and plans for an improvement on real es-
tate and superintends the erection of such improvement, in
accordance with such plans, in pursuance of a contract with
the owner, is entitled to a lien upon such improvement and
the real estate upon which it is situate upon compliance
with the mechanics' lien law of the state. (*Knight v. Nor-
ris*, 13 Minn., 473; *Stryker v. Cassidy*, 76 N. Y., 50.)

But it is contended that the judgment of the district
court giving McDonnell a lien upon the property of Von
Dorn is contrary to law for another reason, viz., that the
oath made by McDonnell to "the account of items of
labor" was administered by a person not authorized by

the laws of the state to administer oaths, and that, there-
fore, even if the services he performed entitled him to a
lien, he never acquired one.    It is said by counsel that this
oath was administered to McDonnell by a notary public
and that she was a female, and that the governor was not
authorized to appoint and commission a female as notary
public.    There are several things to be said of this ar-
gument.    In the first place, neither "the account of
items," the mechanic's lien, nor the oath which it is said
McDonnell took, nor the jurat of the notary public, nor
the name of such notary are in the record.    McDonnell in
his cross-petition alleges that he made an account of the
items of labor he furnished and that he made oath thereto.
Von Dorn, in his answer to this cross-petition, does not
deny these averments, and, of course, they stand admitted.
There is nothing then before us by which we are enabled
to review the error assigned.    By section 1, chapter 61,
Compiled Statutes, 1893, the governor is authorized to ap-
point and commission such number of persons to the office
of notary public in each of the counties in this state as he
shall deem necessary.    The word "persons" in this stat-
ute is broad enough to include women, and we know of no
constitutional provision or law that prohibits a woman in
this state from holding the office of notary public; but
whatever may be the correct interpretation of the statute,
this woman was appointed and commissioned a notary
public by the governor.    She is then a public officer, and
performing her duties as such, and we will not try her title
to the office she holds in this proceeding.    The right of a
woman to hold the office of notary public under the laws
of this state, when she has been appointed and commis-
sioned as such officer by the governor, can only be inquired
into in a suit or proceeding brought against her for that
purpose.    The judgments in favor of Mengedoht and Mc-
Donnell are neither of them contrary to law.

5. Finally, it is said the court erred in overruling the

motion of Von Dorn for a new trial made on the grounds
of newly discovered evidence. The evidence which it is
alleged was newly discovered is, in substance, that Men-
gedoht & Feichtmayer consented to and ratified Von Dorn's
removal of McDonnell as architect and the appointment
of Field in his place. In *Brandt v. Fitzgerald,* 36 Neb.,
683, it was held that a motion for a new trial, on the ground
of newly discovered evidence, was properly denied, although
such evidence was competent under the pleadings in the
case, where the witness who was to furnish the new evi-
dence testified on the trial, was examined by the applicant
for a new trial, and in which examination no effort was
made to elicit any of the facts now claimed to be newly
discovered evidence. Two of the witnesses by whom Von
Dorn claims that he can prove the facts which he alleges
constitute newly discovered evidence were witnesses on the
trial of this case. True, Von Dorn sets out in his affida-
vit for a new trial that he did not know, until after the de-
cree had been rendered herein, the witnesses would give
such evidence. We do not see how this can possibly be
true, as Von Dorn alleges that Feichtmayer met Field and
Von Dorn at the house of the latter, after McDonnell had
been removed, and at that meeting Feichtmayer agreed to
the substitution of Field as architect. If this meeting oc-
curred at Von Dorn's house, and in his presence, he cer-
tainly knew it as well when this suit was being tried as he
did after the decree was rendered. He was aware of the
knowledge in possession of Feichtmayer, and yet it does
not appear that Von Dorn made any effort whatever to
have Feichtmayer testify to what occurred at Von Dorn's
house. In other words, it does not appear that Von Dorn,
by the exercise of reasonable diligence, could not have dis-
covered and produced at the trial the evidence which he
now alleges is newly discovered. The assignment of error
must be overruled. There is no error in the decree of the
district court and the same is affirmed.

We next direct our attention to Von Dorn's appeal from the order of the district court confirming the sale made in pursuance of the decree rendered in this action. To reverse this order eight reasons are assigned :

1. The first, fourth, sixth, and seventh of which are, in substance, that an order for the sale of the property described in the decree was issued by the clerk of the district court while Von Dorn's motion for a new trial was pending and undecided.  The record does not show that the order for the sale of the property was issued while the motion for a new trial was pending.  The decree, in the record signed by the judge of the district court, recites that Von Dorn's exceptions to the report of the referees and his motion for a new trial were overruled on the 6th day of February, 1893, the date of the rendition of the decree; but the pendency of a motion for a new trial does not supersede a decree or judgment rendered or stay the execution thereof.

2. The substance of the second, third, and fifth reasons assigned for reversing this order are, in substance, that the sale was made after a bond had been filed by Von Dorn to supersede the execution of the decree.   The decree was rendered on the 6th day of February, 1893.   It was journalized or formally entered of record in the office of the clerk of the district court on the 23d day of February, 1893.   The supersedeas bond of Von Dorn was filed on the 15th day of April, 1893, or more than twenty days after the rendition of the decree and its entry of record.  If Von Dorn's object in filing this supersedeas bond was to appeal from the decree rendered, then the bond did not operate as a supersedeas, because not filed within twenty days after the rendition of the decree, as provided by section 677 of the Code of Civil Procedure.   If his object in filing the supersedeas bond was to review the decree on error in this court, then the bond filed did not supersede the decree rendered until after the filing of his petition in

error here, in accordance with section 590 of the Code of
Civil Procedure; and the petition in error was not filed in
this court until the 23d of June, 1893, and the sale was
made on the 25th of April, 1893.

3. The final reason alleged for reversing the order con-
firming the sale is, that the first publication of the notice
of sale was made on the 24th of March and the last pub-
lication on April 21. There is no merit in this contention.
As already stated, the sale occurred on the 25th of April,
and, as the first publication of the notice was made on the
21st of March, more than thirty days intervened between
the date of the first publication and the date of the sale.
This was sufficient. (*Carlow v. Aultman*, 28 Neb., 672.)

The order of the district court confirming the sale is af-
firmed. There is no merit whatever in this appeal and it
appears to have been prosecuted solely for the purposes of
delay. The decree rendered by the district court is in all
things

AFFIRMED.

IRVINE, C., not sitting.