ALLIE L. PERRY, APPELLEE, v. OMAHA ELECTRIC LIGHT & POWER COMPANY, APPELLANT.

FILED APRIL 29, 1916.   No. 18840.

1. **Release: AVOIDANCE: FRAUD: BURDEN OF PROOF.** When the plaintiff in a suit for personal injuries has executed a release in writing of all claims for damages from the defendant, and has received a consideration therefor, but seeks to avoid the release on the ground that it was obtained by fraud or deception practiced upon him by the defendant, and that at the time the release was executed his mental condition was such that he was incapable of understanding the nature and quality of the act performed, or of comprehending its consequences, the burden is upon him to prove these facts.

2. **Compromise and Settlement: FRAUD: EVIDENCE.** When the amount received in settlement is grossly inadequate to compensate for the injuries sustained, that fact may be considered, with other evidence, as tending to show unfair practice, that the party has been overreached, and that the minds of the parties never met in the consummation of a valid contract.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Crofoot, Scott & Fraser,* for appellant.

*Lambert, Shotwell & Shotwell, contra.*

Morrissey, C. J.

This is an appeal from the district court for Douglas county in an action wherein the plaintiff recovered a judgment for $2,000 for personal injuries sustained while in defendant's employ. While in the discharge of his duties as an arc light inspector, owing to the defective construction of defendant's lines and its failure to keep its wires properly insulated, plaintiff received an electric shock which threw him from the pole where he was working to the pavement below. He sustained a fracture at the base of the skull and was otherwise injured.

The answer contained a general denial; alleged contributory negligence on the part of plaintiff; that he was familiar with the dangers incident to his employment, and had assumed the risks incident thereto; and further alleged that at a time subsequent to the injuries the plaintiff had made a full and complete settlement with the defendant covering all damages he had sustained, and that plaintiff had executed the following release in writing:

"Oct. 14, 1912.

"Received from Omaha Electric Light & Power Co. the sum of ninety seven dollars ($97.50) which I (being of lawful age) acknowledge to be in full accord, satisfaction and compromise of a disputed claim growing out of a bodily injury sustained by me on or about August 27, 1912, for which bodily injury I have claimed the said Omaha Electric Light & Power Co. to be legally liable, and in consideration of said sum so paid I hereby remise, release and forever discharge the said Omaha Electric Light & Power Co., its successors, administrators, and assigns from any and all actions, causes of actions, claims and demands, for, upon, or by reason of, any damage, loss, injury or suffering which heretofore has been, or which hereafter may be, sustained by me in consequence of such accident and injury.

"Witness my hand and seal the day and date first above written.                                         A. L. Perry.

"Witness: Fred Dickinson."

Plaintiff in reply pleaded that this release was given simply as a receipt for wages due, but that no part of the sum received was in payment for, or in release of, damages sustained by reason of the injuries. He also pleaded that the release was obtained by fraud and deceit; that plaintiff never executed, or intended to execute, a release for the damages he had sustained; that when defendant paid plaintiff the sum set out in the release, and when plaintiff signed the release, defendant represented that it was only a receipt for wages. He also alleged that the release was executed at a time when he was sick and in an enfeebled condition of body and mind due to the shock and injuries he had received, and that he was then suffering from severe headaches and loss of memory and was unable to transact matters of business; that he was then so weak and distressed in mind that he was unable to properly care for himself; that he did not read the release, but relied upon the representations of the defendant; that he believed it was a receipt for wages and nothing more; and that these facts were well known to the defendant and its agents at the time the release was executed.

At the close of plaintiff's case defendant moved for a directed verdict, based solely on the ground that plaintiff could not recover owing to the execution of this release. At the close of defendant's case the same motion was renewed, and, although five assignments of error are made in the brief, appellant's main contention is based upon the proposition that the settlement and release were and are binding on plaintiff, and that he is not entitled to recover in the face of this release.

The first proposition of law advanced by appellant is: "A party who, having the capacity and opportunity to read a release of claims for damages for personal injuries signed by himself, and not being prevented by fraud practiced upon him from so reading it, failed to do so, and relied upon what the other party said about it, is estopped by his own negligence from claiming that the release is not legal and binding upon him according to its terms." It has been so

held in *Osborne v. Missouri P. R. Co.*, 71 Neb. 180. But in this case the jury were instructed that plaintiff could not recover unless they found from a preponderance of the evidence that the release was obtained through some fraud or deception practiced upon him by the defendant or its agents, or that at the time he executed the release his mental condition was such that he could not understand the meaning or purpose of the same. By their verdict they resolved these questions in favor of the plaintiff. As we view the record, the first question to determine is whether the evidence is sufficient to sustain this finding. There is a conflict in the evidence as to the understanding of the parties at the time the release was executed, and this evidence must be considered in the light of all the surrounding circumstances. Plaintiff was a young man of about 23 years of age, and is not shown to have had any business experience. He had suffered a severe shock, necessitating his confinement in a hospital, where he lay in an unconscious condition for a number of days, but had sufficiently recovered to be up and about, and ready to resume work. He testifies, however, that, following the injury, he was nervous, suffered with headaches and with dizziness. Defendant proved that while in the hospital plaintiff was discovered to be suffering from a venereal disease. The medical testimony shows that the troubles of which the plaintiff complained, and from which he claimed to be suffering at the time of the trial, might be due to this disease, and defendant seeks to shift responsibility for his condition on the theory that it was not brought about because of the injuries sustained in its employ, but because of this disease, which is said to be progressive in its nature.

Following the execution of the release, plaintiff resumed work for the company and remained in its employ for several months. He left Omaha in March 1913, but returned in December following, and again made application to defendant for work. The foreman to whom he applied promised him employment, but within a short time thereafter notified him that the company did not desire to secure

his services. Soon thereafter this suit was instituted. It quite clearly appears that plaintiff was incapacitated for work; his injuries were serious; and the amount of recovery is not excessive. It is well to consider the extent of his injuries in concluding whether he meant to make a settlement of his claims therefor when he signed the receipt which is offered in evidence. The fact that he was paid but $97.50 and that the verdict of the jury is for $2,000, and that no complaint of the amount is made, may be taken into account in determining the condition of his mind, his ability to transact business, and his ability to understand the meaning or purpose of the paper at the time of its execution. If he could not understand its meaning or purpose, or if his mental condition was such that he was unable to comprehend its effect, he cannot be held to be bound by this release. On the other hand, the fact that he remained in the employ of the company for a number of months, left the city, and, after an absence of several months, returned again and sought employment may be said to indicate that, in signing the release and accepting the amount paid at that time, he intended to release defendant.

In *Hauber v. Leibold*, 76 Neb. 706, it is held: "In order to make a valid contract the minds of the parties must meet; and if one mind is so weak, unsound or diseased that the party is incapable of understanding the nature and quality of the act to be performed, or its consequences, he is incompetent to make a valid contract, whether such state of his mind be the result of sickness, accident or voluntary intoxication."

If his mind was in such condition that he could not make a valid contract, it matters not, so far as the release is concerned, whether that condition of mind was brought about by reason of the shock from the fracture of his skull or from the disease with which he is shown to have been afflicted.

Where the amount received in settlement is grossly inadequate to the injuries suffered, that fact may be con-

sidered as tending to show unfair practice; that the party has been overreached, and that the minds of the parties never met in the consummation of a valid contract.

Defendant states in its main brief that in this appeal it "has devoted its attention solely to the defense of a settlement and release having been made." However, we find that complaint is made of instructions. The court instructed the jury that the release was binding on the plaintiff, unless he had established by a preponderance of the testimony that it was obtained through fraud or deception practiced upon him, or at the time of its execution plaintiff's mental condition was such that he could not understand its meaning or purpose. We find no error in this instruction.

The judgment is

AFFIRMED.

SEDGWICK, J., not sitting.