JAMES J. BLAHA, APPELLEE, V. CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

FILED APRIL 18, 1930.   No. 27132.

*Wymer Dressler, Robert D. Neely* and *Hugo J. Lutz,* for appellant.

*John A. McKenzie, contra.*

HEARD before GOSS, C. J., DEAN, GOOD, THOMPSON and DAY, JJ., and FITZGERALD and HASTINGS, District Judges.

DAY, J.

This is a suit by James J. Blaha, a car repairer, employed by the Chicago & Northwestern Railway Company, for damages for personal injuries, alleged to have been sustained by him on account of being struck on the head with a sledge hammer, in the hands of a codefendant and coworker, who was striking a long chisel bar which was then held by the plaintiff, in the performance of their duties as car repairers. From a verdict in favor of the plaintiff, the railroad company appeals.

About three weeks following the accident, the plaintiff settled with the company for the resultant damages and executed a release therefor. He seeks to avoid the consequences of this release, alleging that it was secured by false and fraudulent statements and representations made by an agent of the company. Since the right of the plaintiff to maintain an action depends upon this question, it will be considered first.

The general rule is that, where one seeks to avoid the consequences of a release for personal injuries, the burden is upon him to establish by a preponderance of the evidence that the said release was secured through false and fraudulent representations. *Perry v. Omaha Electric Light & Power Co.*, 99 Neb. 730. In this case the jury were so instructed and the verdict has resolved that question in favor of the plaintiff, since in this jurisdiction it is a question of fact for the jury. *Simpson v. Omaha & C. B. Street R. Co.*, 107 Neb. 779; *Osborne v. Missouri P. R. Co.*, 71 Neb. 180; *Perry v. Omaha Electric Light & Power Co.*, 99 Neb. 730.

The question for us to determine here is whether the evidence is sufficient to sustain the verdict. The plaintiff was cared for by a physician employed by the defendant. This physician, according to the evidence most favorable to the defendant, minimized and deprecated the plaintiff's injuries. After a very short time (less than a month), he discharged the plaintiff from his care and directed that he return to work. The plaintiff, relying upon this physician's statements as to his physical condition, settled with the

defendant for a nominal sum, $150, and returned to his work. This physician contended then, and still contends, that the plaintiff's injuries were slight and inconsequential. Granting that the physician was acting in good faith (and the evidence does not justify a finding that he was not) there is evidence tending to prove that the plaintiff was seriously injured. For example, the plaintiff, after attempting to work about two weeks, and finding that his physical condition was not such as would permit him to continue, called upon this physician, who, after some argument, sent him to a hospital. At the hospital ice packs were placed upon his head and Dr. Jonas, a physician and surgeon, also employed by the Chicago & Northwestern Railway Company, performed a serious operation upon his skull. This evidence, together with the inadequacy of the settlement, sustain the finding of the jury that the settlement and release in this case were secured by false representations. The statement of a physician employed by defendant as to plaintiff's condition, if false, is sufficient to avoid a release, executed in reliance upon such false statements. 48 A. L. R. 1486; *Haigh v. White Way Laundry Co.*, 164 Ia. 143, 50 L. R. A. n. s. 1091; *Wingfield v. Wabash R. Co.*, 257 Mo. 347; *Granger v. Chicago, M. & St. P. R. Co.*, 194 Wis. 51.

The defendant contends that fraud and false representations necessary to avoid a release must be proved by clear and convincing evidence. In support of this contention, it cites *Krause v. Long,* 109 Neb. 846. In the cited case, a suit in equity, a judgment secured in a court of law was vacated because said judgment was procured by fraud and perjury. The appellant's application of this rule to the avoidance of a release secured by an employer from an injured employee is novel and untenable. The defendant, in its reply brief, admits the soundness of this rule in the following language: "We would not contend that if, in fact, a man is deceived by the false statements of the attending physician as to his condition, and if he signed a release in reliance upon such false statements, he would be bound by the release." The question, then, as we have

stated, is whether the evidence supports the verdict. The fact is undisputed in this record that after the representation was made, and after the release was signed, another physician and surgeon, employed by the company, performed a proper, if not a necessary, operation upon the skull of the plaintiff. That evidence is sufficient to support the verdict as to the avoidance of the release.

The next question, in degree of importance, presented, is whether any actionable negligence was proved. The plaintiff, with a coworker, was working for the company as a car repairer at the time of the accident. He was holding a chisel to cut off a bolt, which was accomplished by his companion striking the chisel with a sledge hammer. In the prosecution of this operation, the plaintiff was hit on the head with the sledge hammer. Both of these men were familiar with this work. When the plaintiff was holding the chisel, he could not see the man with the sledge hammer, and his safety depended upon his coworker's care in striking the chisel. The plaintiff did not know how the accident happened, except that he was hit on the head and rendered unconscious. His companion, the only other witness present at the time, and the only one who could know anything about it, testified that he hit the chisel a glancing blow. This man was wielding the sledge hammer and was in a position where he could see the plaintiff's head as well as the chisel he was striking. He knew plaintiff could not see how he was striking the blow. He testified on cross-examination that, if he had used care, he could have avoided the accident. True, he also testified that he always used care, when questioned later by the company's attorneys. There is some conflict in the testimony, and particularly in the conclusions which each party has drawn from the same. However, we have examined the evidence as to how the accident happened, and, taken in connection with the physical facts surrounding, it is sufficient to sustain the verdict as to the liability of the defendant on the question of negligence.

This brings us to a consideration of the sufficiency of

the evidence to sustain the verdict on the question of plaintiff's injuries. Suffice it to say that we have examined the record relative to the question of the plaintiff's injuries, and find the evidence sufficient to sustain the verdict. To detail the evidence would require too much space, but summarized it is as follows: The plaintiff was injured by a blow with a sledge hammer on March 14, 1927; he was sick in stomach and weak; he was attended by a doctor; he was home for four weeks; he returned to work April 11; he worked nine days until he was compelled to quit, when he called upon the railroad physician, who took him to the hospital, where a company surgeon operated upon his skull; that he was in the hospital for 12 days before the operation, during which time he had ice bags on his head; he was confined to his bed about five weeks after the operation, and he lost weight and could not sleep. This indicates with certainty that there is ample evidence in the record, if believed by the jury, to support the verdict as to the injuries of the plaintiff.

The defendant complains that the court in its instructions did not limit the consideration of the jury to the negligent acts set out in the petition, and refused to give the defendant's instruction on the question. In the first instruction the court delineated the allegations of negligence in plaintiff's petition as follows:

"(a) The defendant Ben Heldt allowed the hammer to glance off the chisel bar and to strike the plaintiff; (b) in allowing and permitting said defendant Ben Heldt to strike the said hammer from a position in which, if the hammer did glance from said chisel bar, it would strike the plaintiff; (c) in failing to provide the plaintiff and the defendant Ben Heldt with proper and adequate tools and appliances with which to perform their duties in a proper manner; (d) in allowing and permitting the defendant Ben Heldt to use said hammer, when he was not properly skilled in such work; (e) in not providing the plaintiff with a track chisel so that the same could be held in a position with safety by the plaintiff."

By a subsequent instruction the court told the jury that, before the plaintiff could recover, the burden of proof was upon the plaintiff to establish by a preponderance of the evidence that the defendant railway company and the defendant Heldt were negligent, in the particulars as set out in the petition. It is claimed that there is no evidence to support some of these allegations of negligence. Certainly there is evidence in the record to support allegations under "a," "b," and "d" of said instructions. In *Parsons v. Chicago & N. W. R. Co.*, 110 Neb. 836, quoting from *Seaboard Air Line Ry. v. Padgett*, 236 U. S. 668, it was held: "Whether the instructions could have produced misconception in the minds of the jury is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given, and the tendencies of the proof in the case to which they could possibly be applied." This is merely a restatement of the rule announced in a long line of cases too numerous to need citation here. From a careful perusal of the record, including the instructions, while it is improper to give an instruction upon an issue not having proper support in the evidence, even though it may be alleged in the pleadings, nevertheless, reversible error cannot be predicated if it is clearly shown by the record that the jury could not have been misled or prejudiced thereby, and otherwise clearly understood the issues actually tried. No reversible error was committed in this regard in this case.

Finally, the appellant contends that the trial court erred in overruling the motion for a new trial. The ground upon which it is urged that the motion should have been sustained was that of newly discovered evidence. The newly discovered evidence is that, 11 years prior to the accident involved in this case, the plaintiff was injured in an accident while working for another railroad. Defendant contends that plaintiff concealed from it that he had worked for another railroad, or that he had been injured. At the beginning of his testimony he stated he went into railroad work as a car repairer in 1911 and had been working as

such ever since; that he had worked for the Northwestern since August, 1918. Surely this testimony was notice to defendant that the plaintiff had worked for a railroad other than it for a period of seven years, yet they did not inquire about it upon cross-examination. The import of this newly discovered evidence, according to the defendant, is that the plaintiff's present physical condition is due wholly or in at least a large measure to his previous injury. The newly discovered evidence would largely be the testimony of Dr. Young, who testified in the trial as a witness. His testimony was based upon an examination of the plaintiff and the testimony of other witnesses at the trial. The testimony of men with whom plaintiff worked was to the effect that he was irritable, flighty, and hard to get along with. With this in mind, Dr. Young testified that plaintiff was an "emotionally unstable individual;" that "emotional unstability may be a constitutional characteristic of the individual;" that "an injury such as he received * * * might and would undoubtedly increase the degree of emotional unstability;" that he found no organic injury to the brain; that the pendency of a law suit for damages is recognized as one of the reasons for emotional unstability which claimants sometimes exhibit. In the affidavit of this witness, filed to support the motion for new trial, he states that he has now found, although he did not remember it at the time of the trial, that he examined the plaintiff in 1916, at the time he was injured while in the employ of another railroad; that his records show that his complaints then are identical with his present complaints; that in 1926 he caused the wife of plaintiff to be interviewed, and that his records show that she stated his condition had not improved from the time of the accident; and that, in his opinion, his present complaints and symptoms are the result of the former accident. All this evidence is as to his physical condition, and is largely a restatement of much of the evidence on the trial. The plaintiff had worked for the Northwestern for more than 10 years as car repairer. He had worked steadily, faith-

fully, and apparently satisfactorily. Let it also be re- membered that this witness testified at the trial for the de- fendant; that at the request of the railroad company he had made a previous examination; that all the information he has now was then in his records, available to him and the defendant. A new trial will not be granted where wit- ness testified on the trial *(Fitzgerald v. Brandt,* 36 Neb. 683; *Van Dorn v. Mengedoht,* 41 Neb. 525); nor where a witness omitted to testify on the trial as to the facts urged as newly discovered evidence *(State v. Ginger,* 80 Ia. 574; *Sioux City Stock Yards Co. v. Sioux City Packing Co.,* 110 Ia. 396). In fact, this case had been of sufficient interest to him that he caused an investigation to be made two years before, when his investigator told him that plaintiff's wife told him the plaintiff's condition had not improved. Of course, his testimony as to this fact was hearsay, and therefore incompetent evidence. A new trial will not be granted on the ground of newly discovered evidence, unless such evidence would be competent upon a retrial of the case. *McNeal v. Hunter,* 72 Neb. 579.

In addition to the affidavit of Dr. Young, who testified at the trial, the affidavit of Dr. Tyler was also filed. He was a doctor who cared for him at the time of the prior injury and describes it in detail. He did not state, and he apparently could not state, that his present disability is due to the injury suffered more than 10 years before. The trial judge had in mind all the evidence in the case, in- cluding the undisputed fact that this plaintiff had sufficient- ly recovered from the previous injury to perform more than 10 years of service for the defendant. "A motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the court, and will not be overruled unless a clear abuse of discretion is shown." *Christensen v. Omaha & C. B. Street R. Co.,* 85 Neb. 694; *Peterson v. Kouty,* 108 Neb. 321; *Phegley v. State,* 113 Neb. 138.

There is no evidence in this case tending to prove that the prevailing party testified falsely on a vital issue, nor

upon any issue, which would require the granting of the new trial. *City Savings Bank v. Carlon*, 87 Neb. 266. The conclusion is forced upon us, after a careful consideration of the record, that the action of the trial court in overruling the motion of the defendant was not an abuse of judicial discretion.

We have carefully read the record in this case, as suggested by appellant; we have examined all the instructions requested as well as those given by the court, and we find no reversible error in the instructions as given. We have discussed only those assignments of error argued orally before the court, or discussed in the briefs. In conformance with the foregoing opinion, the judgment of the trial court is

AFFIRMED.