Knight v. Norris et al.

---

## A. F. KNIGHT

### vs.

## CHARLES F. NORRIS et al.

Under *Ch.* 90, *Gen. St*, a person who furnishes plans and specifications for, and superintends the work upon a building, under a contract with the owner of the building, performs labor for erecting and constructing such building and may obtain a lien therefor by taking the steps prescribed by the statute.

It appeared in this case that when the building was nearly completed, and before the contract of the plaintiff had been wholly performed, work on the same was suspended for several months; that during such suspension the plaintiff's lien claim was filed; that the suspension was not occasioned by any fault on the part of the plaintiff; that his plans and specifications were completed before the suspension; that the amount of the the plaintiff's claim was computed with reference to the cost of the building exclusive of what remained to be done on it at the time when the lien claim was filed, and that no price for the plaintiff's services was agreed

upon, but that he was to receive what the same were reasonably worth. *Held*, that under these circumstances the filing of the lien claim was not premature.

The sufficiency of evidence to sustain a finding considered and determined.

The refusal to strike out unimportant hearsay testimony is not a ground for a new trial. A lien claim or account describing labor performed, as "plans, specifications, and superintending of buildings," and also describing and locating the building, and designating the time of the performance of the labor and its price, is sufficiently specific as to the item of labor.

On the 21st day of July, 1865, Albert McCargar was the owner of certain real estate in the city of St. Paul, and being about to erect a building thereon, contracted with the plaintiff for his services as architect in erecting the same. The plaintiff brought this suit in the Ramsey county District Court, against McCargar and certain other parties who had purchased said premises at a sale thereof upon the foreclosure of a mortgage executed by McCargar in July, 1866, to recover judgment against McCargar for the value of such services, and have the same adjudged a lien upon said premises. The cause was tried before a referee, who found, among other things, that there was due the plaintiff from the defendant McCargar the sum of $2071.72, and that the plaintiff was entitled to have the amount so due him declared and adjudged a lien upon said premises from the 21st of July, 1865. The defendants made a motion to have the referee's report set aside, and for a new trial, which motion was denied, and the defendants appeal from the order denying the same to this Court.

H. J. HORN for Appellants.

I. V. D. HEARD for Respondent.

*By the Court.*—BERRY, J.—*Section* 1, *Ch.* 90 *p.* 589, *Gen. Stat.*, provides that "whoever performs labor or furnishes

materials or machinery for erecting, constructing, altering or repairing any house   *   *   or other building,   *   * by virtue of a contract or agreement with the owner or agent thereof, shall have a lien to secure the payment of the same," &c., &c.  *Sec.* 7 of the same chapter provides, that " any person entitled to a lien under *Sec.* 1, aforesaid, shall make an account in writing of the item of labor, skill, material and machinery furnished, or either of them, as the case may be," and that such account when verified, &c., shall operate as a lien.

Under the provisions of this chapter the plaintiff claims a lien for labor by him performed in erecting and constructing a building, which labor is described in his account filed under the statute, as "plans, specifications, and superintending of building, at five per cent. on estimated cost ($38,780,) $1,939." We are of opinion that services of the kind for which the plaintiff seeks the lien are embraced in the meaning of the statute.  In rendering such services a party certainly " performs labor," and furnishes labor and skill.  The labor is performed and the labor and skill furnished " for erecting" and " constructing " a building.  It is remarked by Merrick, J., in *Parker et al. vs. Bell et al.*, 7 *Gray*, 432, " the Legislature have regarded it as a sound and just principle, that all those who have by the consent of the owner, or in pursuance of contracts with him for that purpose, contributed to increase the value of his property, should have an interest in it until their respective claims for such services shall have been paid and discharged." Our Legislature had we think, substantially the same object in view.

The labor and skill of an architect and superintendent of the work upon a building are a part of the expense of erecting a building, and not unfrequently an indispensable and highly valuable part.  As an item of such expense, they en-

ter into and help to form the value of the building, and we can conceive of no sound reason in the nature of things why the person who performs such labor, and furnishes such skill, should not receive the same protection ʷas the carpenter, the mason, the lumber dealer, or the hardware merchant; and as before remarked, we are of opinion that the services for which the plaintiff claims a lien are covered by the statute. See *Bk. of Pennsylvania vs. Gries,* 35, *Penn. State,* 423.

This disposes of what we understand to be the main point relied upon by the defendants. There are, however, several minor points made, which we will briefly consider. The de- fendants insist that the plaintiff's contract was *entire,* and that the filing of the lien before the building was finished was premature. It appears that when the building was finished, with perhaps the exception of putting on the cornice, work on the same was suspended for several months, and that during such suspension the plaintiff's lien claim was filed; that the suspension was not occasioned by any fault on the part of the plaintiff; that his plans and specifications were completed before the suspension; and that the amount of his claim was computed with reference to the cost of the build- ing, exclusive of what remained to be done upon it at the time when the lien claim was filed; and it further appears that no price for his services was agreed upon, but that he was to receive what the same were reasonably worth. Under this state of facts we think that he was justified in filing his lien claim when he did, and claiming the value of the services rendered by him up to that time, following the contract as far as he was able. The suspension of the work without any fault on his part, should not have the effect to deprive him of his lien, or to postpone his right to the remedy provided by the lien laws to enforce and secure his claim. *Young vs. Ly- man,* 9 *Barr.,* 450; 35 *Penn. St.,* 427. It is further insisted

Knight v. Norris et al.

by the defendants that the evidence was insufficient to estab-
lish the charge of superintending. As to the fact that the
plaintiff did superintend the work, we think there was no lack
of evidence. As to the fact that such superintendence was
part of the services contracted to be performed, the plaintiff
testifies that McCargar came to his office, and wished to en-
gage his services to build McCargar's block, as architect;
that his services were in making plans and drawings, and su-
perintending the erection of the building, and giving direc-
tions; that when he showed McCargar two designs, McCar-
gar selected one, and said: "Go ahead with that as fast as
you can;" that at the first interview McCargar said he
wanted the plaintiff to prepare plans, and get up the best
building in St. Paul; that he, the plaintiff, was at the build-
ing, "superintending with McCargar."

Thomas Fitzpatrick testified that he performed the carpen-
ter work on McCargar's block, and attended to the execution
of the drawings generally, on the whole building; that he
was employed by McCargar, and attended to carrying out
the plans, making patterns for stone cutters, &c, that is,
subject to Mr. Knight's approval; and that McCargar told
him, for any information, he should go to Mr. Knight, and
he would give it to him; that McCargar told him this about
the time he commenced work; that he did consult with
Knight; that Knight superintended the whole; passed fre-
quently and looked at the building; that Knight stayed there
ten or fifteen minutes when he came; as a general rule one-
fourth of an hour or less; that he came along three times a
day, most every day. We are of opinion that the testimony
had a reasonable tendency to establish the charge for superin-
tending, and therefore, that the point made by the defend-
ants is not well taken.

The plaintiff upon the trial testified as follows:
vol. xiii—32.

"He (McCargar) expressed himself satisfied with my services, and said he would make no objection to my claim. That was last fall or winter after suit was brought."

The defendant moved to strike out this piece of testimony on the ground that it appeared that the statement testified to was made after suit was brought, and after the rights of the defendants had attached on the premises, and because the same is incompetent and hearsay testimony. The referee refused to strike out the testimony objected to. To our minds this testimony, admitting that it was hearsay, possesses no particular importance in any point of view. "He expressed himself satisfied with my services, and said he would make no objection to my claim." What services and what claim? The claim that the plaintiff made plans and specifications for the building is not disputed. The claim that he superintended the work is disputed.

Certainly there is nothing in what McCargar said to show that he recognized the latter claim; no acknowledgment that the plaintiff had performed any services in the way of superintendence. The plaintiff testifies that he had never presented any account to McCargar. The retention of testimony so indefinite, and so valueless, as it appears to us, could not, so far as we can see, prejudice the defendants, and we think it furnishes no reasonable ground for a new trial. The last point urged by the defendants is that the lien claim does not conform to the statute; that it does not describe the charge or services, and is otherwise too vague; that it is not an account in writing of *the item* of labor. The labor performed is described in the account as "plans, specifications and superintending of building," and the building is described and located, and the time of the performance of the labor, together with its price designated. From the character of the labor, it could not be expected that it would be itemized so

as to give the hours and fractions of hours during which the services were being performed. There was in reality but one item. The charge is made as would seem to be customary and reasonable in the gross. We think the account sufficiently specific. This disposes of all the points made by the defendants, and as we discover no error, the order refusing a new trial is affirmed.

WILSON, Ch. J., *Dissenting.*—The view which I take of one question in this case, makes it unnecessary to consider any other.

The plaintiff, an architect, on a contract with McCargar furnished plans and specifications for the building erected on the premises mortgaged to the defendant, and superintended the erection of said building. This action is brought to recover the sum owing to him in the premises, and to have it declared a lien on the building. The claim is made and allowed for a sum in gross, no separate claim being made for either the plans, specifications or superintending. Unless he is entitled to recover the whole sum, therefore, he cannot recover at all in this case. The lien is claimed under *chap*. 90 *of the General Statutes. Sec.* 1 of this chapter reads : "Whoever performs labor or furnishes materials * * for erecting, constructing, altering or repairing any house, or other building, or appurtenances, * * by virtue of a contract or agreement with the owner, or agent thereof, shall have a lien," &c. *Sec.* 7: "Any person entitled to a lien under section one aforesaid, shall make an account in writing of the item of labor, skill, material, * * and file the same in the office of the register of the county," &c., &c.

*Sec.* 9. "When the owner of any house or buildings, described in the first section of this chapter, suspends its pro-

gress or completion, without the consent of such laborers, mechanics or furnishers, or if the progress or the completion of the same is suspended by the decease of the owner at a stage when, from its unfinished state, such structure would go to waste, the laborers, mechanics and furnishers thereto, or any of them, may at their election proceed with the same at their cost, so far as to enclose such building, and thereby prevent such waste."

The form of the affidavit required to be made by the person claiming the lien is: "——— makes oath and says:

"That the annexed is a true and correct account of the labor performed to and for C. D. at said county, and that the prices therefor set forth in the account are just and reasonable, and the same is unpaid. That said labor was performed for said C. D. at the time in said accounts mentioned, under and by virtue of a contract between affiant and C. D., and for erecting or repairing a certain house," &c. The remainder of the chapter does not throw much additional light on the question to be determined, viz: whether an architect belongs to. any class for whose benefit this special remedy is given. Taking together the several sections elucidating this question, and interpreting every part so as to make it consistent with every other part, and giving the words used their obvious and ordinary signification and import, I am unable to resist the conclusion, that the law does not give to an architect a lien. He does not "perform labor for erecting the building" any more than does the lawyer who draws the contract between the owner and contractor. Such contract frequently gives with great minuteness the plans and specifications according to which the building is to be constructed. But neither the attorney nor the architect is a "*laborer*" or "*mechanic*," or "*furnisher*," according to the ordinary and well understood meaning of those terms. The meaning

of each of these words is well and generally understood by those for whose benefit the law was enacted, and this is the meaning which we must presume the legislature intended them to have here. It will be observed too, that the word "laborer" is not used in the general sense of one who performs labor, for then the word "mechanic" would be tautological. It seems to have its more limited and ordinary signification, which would not include architects.  ♦

The fact that *section* 7 requires an account to be made of the items of labor, or *skill* furnished, can only be considered an argument in favor of the plaintiff on the assumption that the mechanic does not furnish skill, but this assumption does not accord with the fact, and the argument based on it therefore fails. The view which I take is fortified by the statutes of our State in *pari materia*. It is well settled, that in considering a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject matter are to be taken together and examined, and this rule holds good, though some of the statutes may have expired, or been repealed, and whether they are referred to or not. *Sedgwick on Stat. Law*, 247–250. In the Revised Statutes of 1851 (*chap.* 97) is found our first law on the subject. Its language is: "Any person who has a subsisting cause of action to the amount of ten dollars for any labor performed upon any lands, tenements or hereditaments, or for any materials furnished for any improvements upon any lands," &c., may obtain a lien in the mode prescribed. This clearly does not give a lien to architects, for it cannot be pretended that they perform labor upon any lands, or tenements. This law was repealed by *Chap.* 16 *of the Laws of* 1865.

The last mentioned law gives a lien in such cases, and enumerates those entitled thereto as follows: "All and every dwelling house hereafter constructed, &c., shall be subject to

the payment of the debt contracted for, or by reason of any work, or materials found and provided, by any brick maker, brick layer, stone cutter, mason, lime merchant, carpenter, painter and glazier, iron monger, plasterer, and lumber merchant, or any other person employed in erecting, or furnishing the materials for, or in the erection or construction of such house," &c. The general language of this law—" *any other person employed in the erection and construction of such house*," would not by any allowable latitude of construction embrace architects, but the meaning of these words must be arrived at in view of the context, for when general words follow particular ones, as in this case, the rule is to construe them as applicable to persons *ejusdem generis. Sanderman vs. Breach,* 7 *Barn. & Cress.*, 99. Next is the act of March 20th, 1858, which provides that " every dwelling house, or other building, for the construction, erection, or repairs of which any person shall have a claim for materials furnished, or services rendered, shall  * * *  be subject to the payment of such claim."

Next is the act of August 12th, 1858, which was incorporated into the general statutes with a few unimportant changes, and which is the law now in force.

The history of the legislation on this subject shows very clearly to my mind the policy of the law makers to have been to protect those constructing or erecting the building and not those planning it. The earlier acts manifestly do not embrace architects, and I see nothing in the later to show a change of policy, or purpose, on the part of the legislature. The object of each repeal and re-enactment, above referred to, is made manifest by changes in the law clearly and unmistakably made; and if it had been in the mind of the legislature to change the policy of the State in this respect, and to include architects in the list of those for whose benefit this

special remedy is given, it is reasonable to suppose that we would find in the language of the law some evidence of the purpose to make such change. Such evidence is not only wanting, but to my mind the phraseology of the later acts shows that the legislature did not intend any change of policy, or of the law in this respect. The case of *Bank of Pa. vs. Gries*, 35 *Pa. State R.*, 423, is clearly distinguishable from this, and cannot be considered an authority for the plaintiff. I think the order should be reversed.