Mills, C. J., and McFie, J., concur; Leland and Crumpacker, JJ., did not participate in this decision.

---

[867. August 23, 1900.]

HARRY D. JOHNSON, appellant, v. FRANK P. McCLURE et al., appellees.

SYLLABUS BY THE COURT.

MECHANIC'S LIEN—ARCHITECT HAS.—An architect who prepares plans and specifications for a building and superintends the construction of such building in accordance therewith has a lien for his services both in preparing said plans and specifications and in superintending such construction. Boyle v. Mining Company, 9 N. M. 237 (50 Pac. 347), distinguished.

*Appeal* from the District Court of Bernalillo County, Second Judicial District. Reversed and remanded with directions.

Facts stated in the opinion.

SUMMERS BURKHART for appellant.

1. Mechanic lien laws are to be liberally construed. Davis v. Alford, 94 U. S. 547; Flagstaff Mining Co. v. Cullins, 104 U. S. 176.

2. An architect who draws the plans and specifica-

tions for a building and superintends the erection thereof under employment by the owner or his agent, "performs labor" upon a building within the meaning and language of section 2217 of Com. Laws of 1897, and has a lien upon the premises upon filing the statutory claim for lien.

That he performs labor upon the building is clear. That such labor is of a character which entitles him to a lien would seem equally free from doubt, were it not for the construction placed upon said section in the case of Boyle v. Mining Co., 50 Pac. Rep. 347, which was considered by the court below to be controlling in the case.

Section 2217 provides that: "Every person performing labor upon, or furnishing materials to be used in the construction * * * of any mining claim, building * * * has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building, or other improvement or his agent, and every contractor, sub-contractor, architect, builder or other person having charge * * * of the construction * * * either in whole or in part, of any building or other improvement as aforesaid shall be held to be the agent of the owner for the purposes of this act."

In Boyle v. Mining Company, supra, plaintiff sought to charge defendant company's mining property with a lien for his services as general manager and superintendent thereof under contract with the company. The court held upon the proofs that the services rendered were not of a kind to entitle him to a lien under said sections, and construed the words: "Every person performing labor," contained therein to mean: "Every person performing manual labor," citing many cases as supporting this construction.

It is not contended that upon the facts of that case, the judgment entered was not the correct one, but I respectfully submit that the construction given to the statute is not sustained by principle or authority.

It is true that mechanic's lien laws were originally

enacted for the protection of laborers, using that word in a restricted sense as meaning those persons who perform physical labor only, and who, by reason of their humble position, were supposed to need the especial protection of the state, but their scope has been greatly enlarged.

The general theory upon which these laws now proceed is that any person who has contributed by his labor of whatever kind, or by furnishing materials, to a building erected by an owner on his premises, shall have a claim upon the property for compensation. It is evident from the whole context of our lien law that this principle controlled in its enactment, and that it was intended thereby to give security to all, without distinction, who by their labor, skill or materials, add value to the property of their employer.

No language can be more general and comprehensive than: "Every person performing labor," and its natural and plain import includes all persons who perform labor, whether skilled, or unskilled, mental or physical, professional or mechanical.

That it was used in this general and broad sense is disclosed by the whole act. Other sections show that contractors, who, themselves, as a rule, perform little or no physical labor upon a building, and furnish no materials directly therefor, are embraced within its meaning, as well as the laborers and mechanics employed by them. Material men are expressly protected.

Nothing in the law indicates that it was enacted for the benefit of any particular class of persons. On the contrary, its context shows it to be for the protection of all persons contributing to the construction of a building by their services or materials.

The work of a supervising architect is as clearly within the generally accepted meaning of the word labor as is that of a carpenter. It is as essential as that of the mason or painter. He not only plans the whole structure, but sees that those plans are faithfully carried out. He super-

vises and directs the work of all others engaged in its construction. He stands between the owner and the contractor, sees that the proper materials are used, and that the work is honestly done.

This is certainly labor of an important character, and requiring much mechanical skill.

That a person, not an architect, employed by the owner or the contractor, to perform this service except the drawing of the plans, would have a lien, must be conceded. How, then, can it be said that a supervising architect who performs the additional service of preparing the plans, has not a lien? There can be no plausible or logical reason for denying it to him. As said by Phillips, (Phil. Mech. Liens, Sec. 158):

"The labor and skill of an architect and superintendent of work upon a building are properly a part of the expense of erecting a building, and not infrequently an indispensable and highly valuable part. As an item of such expense, they enter into and help to form the value of the building, and there is no sound reason in the nature of things why the person who performs such labor and furnishes such skill should not receive the same protection as the carpenter or mason."

The effect of the construction given to section 2217 in Boyle v. Mining Company, supra, is to exclude from the benefits of the act the supervising architect alone of all persons contributing by their services and materials to the value of a building; that is to say, that the Legislature, by the words "Every person performing labor upon or furnishing materials for" a building intended to include every person whose labor or material goes into a structure, except an architect who plans it and superintends its erection.

This can not be called a strict construction of the law. It is a forced and strained construction—in fact, judicial legislation.

No authority cited in that case supports the conclusion reached except Stryker v. Cassidy, 10 Hun. 18, which was

under a statute like ours. This case, however, had been reversed in 76 N. Y., 50, long before it was cited in the opinion.

In Mining Co. v. Cullins, 104 U. S. 176, the court decided that an overseer of a mine employed to direct and supervise the work of others was entitled to a lien under a statute similar to ours. The question raised here was not in the case, and is in no way affected by it.

The statutes construed in the other cases cited differ from ours in giving the lien to particular classes only, and not to "every person performing labor," and the courts hold the several plaintiffs in those cases not to be within the protected classes.

The distinction is clearly drawn between the two kinds of statutes by the Court of Appeals of New York in over-ruling Stryker v. Cassidy, 10 Hun. 18, supra.

"The cases of Aikin v. Wasson, 24 N. Y. 482, and Coffin v. Reynolds, 37 id. 640, arose under statutes making stockholders of corporations liable for debts, owing by the corporation to 'laborers or servants,' and the court, proceeding upon the ground that the statutes then under consideration were intended for the protection of persons belonging to the class commonly known as laborers or servants, and performing manual labor merely, held in the one case that a contractor for building a portion of a railway, and in the other that a secretary of a corporation to whom the corporation was indebted for services in that capacity were not laborers or servants within the acts in question.

"The lien law in question here does not indicate an intention to restrict the benefits of the lien to laborers or servants in the sense in which those words were used in the statutes under consideration in the cases cited. Contractors are clearly within it, as its provisions show, and there seems to be no ground for refusing a lien to an architect and allowing it in favor of contractors, or dealers who furnish materials to be used in the erection. The lien is

given to 'all persons performing labor' and not to a particular class of laborers, as in the other statutes referred to. We are therefore of the opinion that upon the facts of the case, the plaintiff was entitled to a lien and that the conclusion of the general term upon this point was erroneous." Stryker v. Cassidy, 76 N. Y. 50—S. C.—32 Am. Rep. 262.

In Leuffer v. R. R. Co., 84 Pa. St., 168, cited in the opinion in Boyle v. Mining Co., supra, it is held under a special statute for the benefit of "laborers and workmen" on railroads, that these words were used in their well defined sense as applying to those doing manual labor only, and that a civil engineer was not a laborer or workman within their meaning.

On the other hand in Bank v. Gries, 35 Pa. St. 423, the same court held under a statute like ours, giving a lien to "any person who shall perform work," that a supervising architect is within its terms and this case is expressly recognized as authority in Kirk v. Price, 90 Pa. St. 47, and Rush v. Able, Id., 153, both decided after the Leuffer case.

In England v. Piano Co., 41 N. J. Eq., 470, another case cited by this court, the president of an insolvent corporation was held not to be protected by an act declaring a lien in favor of "laborers" in the employ of such corporations, while by the same court in Mutual Benefit Life Insurance Company v. Rowland, 26 N. J. Eq. 389, under a statute like ours, a supervising architect was given a lien without discussion, the court saying that "the man who draws the plans and superintends and directs the construction is clearly within the provisions."

As I have said before with the exception of the overruled case of Stryker v. Cassidy, 10 Hun. 18, and Mining Company v. Cullins, 104 U. S. 176, where an overseer of a mine was given a lien under a statute like ours, every case cited in Boyle v. Mining Company as supporting the construction thereby placed upon our lien law, construed a statute differing from ours in that the lien was given to a

particular class of persons, and not to "every person per-
forming labor."

Even under statutes of this kind, a supervising archi-
tect has been as often given a lien as denied it. Mulligan
v. Mulligan, 18 La. An. 20; Arnoldi v. Gouin, 22 Grant Ch.
(Can.) 314.

On the other hand, however, it is almost universally
held that an architect who draws the plans and superintends
the erection of a building in accordance therewith is em-
braced within the meaning and terms of statutes like ours,
giving a lien to "every person performing labor," or contain-
ing equivalent expressions, and is entitled to a lien for all
his services, both as architect and superintendent. I can
find but two cases in the books which depart from this
otherwise uniform rule, the one, Thompson v. Baxter, 21
S. W. 668, 92 Tenn., 305, decided by a divided court, and
the other, Mitchell v. Packard, 168 Mass., 467, Am. State
Reports, 403, in which the right to a lien for services as
superintendent was conceded but for those as architect
denied. The text writers on this subject without exception
recognize this rule. Phillips Mech. Liens, Sec. 158; Boisot
Mech. Liens, Sec. 116; Kneel. Mech. Liens, Sec. 13a;
Stryker v. Cassidy, 76 N. Y., 50, 32 Am. Rep. 262; Mutual
Ben. Life Ins. Co. v. Rowand, 26 N. J. Eq. 389; Bank of Pa.
v. Gries, 35 Pa. St. 423; Knight v. Norris, 13 Minn. 473;
Hughes v. Torgeson, 11 So. Rep. 209, 96 Ala, 346; Taylor
v. Gilsdorf, 74 Ills. 354; Phoenix Furniture Co. v. Put-in-
Bay Co., 66 Fed. 683. (Ohio.) ; Gardner v. Leck, 54 N. W.,
746, 52 Minn. 522; Vandorn v. Mengedoht, 59 N. W., 800,
41 Nebraska, 525; Parson v. Brown, 66 N. W. 800 (Iowa.) ;
Rinn v. Electric Power Co., 38 N. Y. Sup. 345; 3 App. Div.
305; Rara Avis Mining Co. v. Bouscher, 12 Pac. 433; 9
Colorado, 385; Mulligan v. Mulligan, 18 La. Ann. 20;
Arnoldi v. Gouin, 22 Grant. Ch. (Can.) 314.

3. He has a lien under said section for his services as
architect as well as for his services as superintendent.

It is not contended that an architect who merely draws

plans for a building has a lien for such services. But when those plans are prepared by an architect for a certain building and that building is erected in accordance therewith under his superintendence, he is entitled to a lien for all his services, including the drawing of the plans, which under this state of facts becomes labor upon the particular building. To this effect are all the cases cited to the last point.

4. Under plaintiff's claim for lien in this case, he would be entitled to establish his lien for the value of his services as superintendent of construction, even though the court should hold that he has no lien for his services as architect.

In view of the authorities above cited, to the effect that a supervising architect has a lien for all his services, both as superintendent and architect, a discussion of this point would seem unnecessary.

If, however, the court should hold that he has a lien for his services as superintendent but not as architect, his claim for lien here would still be good so far as his services as superintendent are concerned. Plaintiff was employed to draw plans and specifications for a building and to superintend its construction under those plans, and performed his contract. No compensation was agreed upon for this work and he sues here upon a quantum meruit. His claim for lien, filed in good faith under the advice of his attorney, is for a lump sum as the value of his services both as superintendent and architect, under an almost universal custom amongst architects to make one charge for all of such services. The value of such services, in any case, whether for the whole or in part, must be determined by the court, as there is no contract price for the same. It will be an easy matter upon proof to establish the value of his services in each capacity. Upon this state of facts, there can be no reason for holding the claim bad in toto. In Boyle v. Mining Company and cases cited, the facts were different.

In those cases there was an entire contract to, do certain things for a fixed sum for all the services, a part of which entitled the claimant to a lien and a part did not; the Courts hold that it was impossible for them in such case to say what part of the contract price was for services covered by contract which gave a lien and what part was for services which did not, and therefore that the whole claim was bad. No such difficulty can arise here. Mitchell v. Packard, 168 Mass. 467; Rara Avis Mining Co. v. Bouscher, 12 Pac. 433.

Alonzo B. McMillen for appellee.

1. An architect is not entitled to a mechanic's lien for compensation in drawing plans and specifications for a building, although he may have prepared the plans and specifications at the request of the owner, and with the intention of having them followed in the construction of a building upon the particular real estate upon which he claims a lien.

This proposition is plain when we examine the terms of the statute. An architect does not perform labor about a building. The building for which he draws plans and specifications may never be erected. Neither is he a laborer in the general acceptation of the term. If he is entitled to a lien for preparing plans and specifications for a building, he is entitled to it at the moment he performs the services. Yet no one would contend that he is entitled to a lien in case no building was ever commenced or erected. The services of an architect are, no doubt, important and valuable, and in a great many instances, absolutely necessary, but they are professional in their character, and are not within the class provided for by our statute. An architect no more performs labor upon a building for which he draws plans and specifications than the engineer who surveys the lot, or abstracter who makes the abstract of the title, or the lawyer who passes on the title, or prepares the contracts or bonds to be executed by the contractor.

The following authorities are to the point that an architect is not entitled to a lien upon either the real estate for which the plans and specifications were intended, or upon the building erected in accordance with such plans and specifications. Price v. Kirk, 90 Pa. St. 47; Rush v. Able. 90 Pa. St. 153; Raeder v. Bensbury, 6 Mo. Ap. 445; Foster v. Tierney, 91 Ia. 253; 51 Am. St., 343; 59 N. W. 56; Foushee v. Griggsby, 12 Bush, 76; Thompson v. Baxter, 92 Tenn. 305; 21 S. W. 668; Mitchell v. Packard, 168 Mass. 467; 60 Am. St. 404; Bank of Pa. v. Gries, 35 Pa. St. 423; Ames v. Dyer, 41 Me. 397.

That the preparation of plans and specifications by an architect is not labor upon a building seems too plain to need argument. Indeed, counsel for appellant says on page 12 of his brief:

"It is not contended that an architect who merely draws plans for a building has a lien for such services. But when those plans are prepared by an architect for a certain building and that building is erected in accordance therewith under his superintendence, he is entitled to a lien for all his services, including the drawing of the plans, which under this state of facts becomes labor upon the particular building. To this effect are all the cases cited to the last point."

We expect to show under our third heading that appellant's contention that the subsequent superintendence will create a lien for plans and specifications is not sound.

2. A superintendent who does not perform bodily labor upon a building is not entitled to a mechanic's lien for such superintendence. Boyle v. Mountain Key Mining Co. et al., (N. M.) 50 Pac. 347; Thompson v. Baxter, 92 Tenn. 305; 36 Am. St. Rep. 85.

In the case of Mining Company v. Collins, 104 U. S. 176, the Supreme Court, while holding that a man who superintends the workmen in a mine performed labor entitling him to a lien under the Utah statute, was careful to say:

"The finding of the district court makes clear the character of the services rendered by the defendant in error. He was not the general agent of the mining business of the plaintiff in error. That office was filled by Patrick. He was not a contractor. His services were not of a professional character, such as those of a mining engineer. He was the overseer and foreman of the body of miners who performed manual labor upon the mine. He planned and personally superintended and directed the work, with a view to develop the mine and make it a successful venture. His duties were similar to those of the foreman of a gang of track hands upon a railroad, or of a force of mechanics engaged in building a house. Such duties are very different from those which belong to the general superintendent of a railroad, or the contractor for erecting a house. Their performance may well be called work and labor; they require the personal attention and supervision of the foreman, and occasionally in an emergency, or for example, it becomes necessary for him to assist with his own hands. They can not be performed without much physical exertion, which, while not so severe as that demanded by the workman under his control, is nevertheless as really work and labor. Bodily toil, as well as some skill and knowledge in directing the work, is required for their successful performance. We think that the discharge of them may well be called work and labor, and that the district court rightfully declared the person who performed them entitled to a lien under the law of the Territory."

3. Superintendence of the construction of a building by an architect can not, under our statute, give him a lien upon the real estate for his services in drawing plans and specifications. Mitchell v. Packard, 168 Mass. 467; 60 Am. St. 103; Thompson v. Baxter, 92 Tenn. 305; 36 Am. St. 85.

Counsel for appellant cites a number of authorities which he claims support his contention that the superintendence of the building by an architect gives him a lien,

not only for superintending, but for drawing plans and specifications. While a number of the authorities cited seem to so hold they give no reason for such holding. Nothing can be more absurd. It would be just as sane to argue that a lawyer can acquire a lien upon a building which he drew the contracts and bonds for its construction, because he afterwards went up the building and laid a few brick as a mason. Counsel for appellant does not pretend to claim that his client is entitled to a lien for preparing the plans and specifications on any other ground than that it was followed up by a superintendence of the building. Our statute does not provide for a lien under such circumstances. It nowhere says that a person who superintends a building shall have a lien for plans and specifications before that time drawn. Suppose the plans and specifications had been prepared by A and another architect, B, had superintended the building. Would the superintendence of B have given A a lien for plans and specifications? Can it be possible that if an architect has no lien for plans and specifications he can afterwards acquire a lien therefor by superintending a building? The court might with equal grace give a general storekeeper a lien for groceries sold to a builder to feed his workmen merely because he afterwards sold hardware to be used in the construction of the building. Or it might give a person who is employed to cook for the workmen a lien upon the building because the food which he furnished helped to strengthen the arm which laid the brick or prepared the boards for the building. If we are to confine ourselves to the terms of the statute there can be no other conclusion than that the superintendence of a building can not create a lien for plans and specifications. If an architect has a lien for plans and specifications it is because such plans and specifications are construed to be labor upon a building. It can not be because of subsequent superintendence.

4. Where a mechanic has so intermingled his claim of lien with unlienable items that the exact amount for

which he is entitled to a lien can not be readily ascertained by inspection of the claim, the whole lien must fail, whether the error was intentional or unintentional.

The statute requires the lien claimant to file a claim verified by his oath, containing, among other things, a statement of his demands after deducting all just credits and offsets. The appellant states in his claim that he performed services as an architect upon said building, preparing the plans and specifications therefor, and acting as superintendent of the construction thereof under a contract with Frank P. McClure. That no price was agreed upon for his compensation, and that his services were reasonably worth the sum of one thousand five hundred dollars. Can anyone, upon an inspection of this lien, determine what part of said sum is claimed for plans and specifications, and what part for superintendence? The authorities are uniform upon the proposition that unless the amount for which the claimant is legally entitled to a lien may be determined by an inspection of the lien claim the whole lien must fail. Boyle v. Mountain Key Mining Co. (N. M.) 50 Pac. 347; Boisot on Mechanics' Liens, Sec. 428; Baker v. Fessenden, 71 Me. 292; Kelley v. Kelley, 77 Me. 135; Driscoll v. Hill, 11 Allen, 154; Lewin v. Whittenton Mills, 13 Gray, 100; Edger v. Salisbury, 17 Mo. 271; Nelson v. Withrow, 14 Mo. Ap. 270; Gauss v. Hussman, 22 Mo. Ap. 115; Murphy v. Murphy, 22 Mo. Ap. 18; Schulenburg & Boeckler Lumber Co. v. Strimple, 33 Mo. Ap. 154; Duggan Cut Stone Co. v. Gray, 43 Mo. Ap. 671; Reitz v. Ghio, 47 Mo. Ap. 287; O'Brien Boiler Works Co. v. Haydock, 59 Mo. Ap. 653; Whittenack v. Noe, 11 N. J. Eq. 321; Williams v. Coal Co. 25 Oreg. 426; 36 Pac. 159.

Boisot on Mechanics' Liens, section 428, says:

"In order to render an error in the claim harmless, it must not only have been innocently made, but it must also be of such a nature that the elements of a valid lien can be found in the allegations that are correct. Where a mechanic has so intermingled his lien claim with non-lien

items that the exact amount for which he is entitled to a lien can not be readily ascertained by inspection of the claim, the whole lien must fail, whether the error was intentional or unintentional."

In the case of Williams v. Toledo Coal Company, et al, the Supreme Court of Oregon says:

"An account containing a lumping charge, in which is mingled an item for which no lien is given, will not support a lien; and the defect can not be cured by oral evidence, by means of which the item for which a lien is given may be separated from those for which a lien is not given, 2 Johns. Liens, Sec. 1419. In Dalles Lumber & Manufg. Company, 3 Or. 527, it was held that a corporation incorporated for the purpose of manufacturing and selling lumber could not acquire a lien for labor, and that, having joined in a lumping charge a claim for labor with that for material, no lien was thereby created. So, in Kezartee v. Marks, 15 Or. 259; 16 Pac. 407, it was also held that a lumping charge for material furnished in the construction of a dwelling house and fence did not create a lien upon the house when that alone was sought to be charged by the lien. Following the rule established by these decisions we hold that the claim for building the wagon road can not be joined in a lumping charge with one for digging a ditch or running a tunnel, and, the claimant having joined them in his notice, no lien attached to the premises thereby." Williams v. Coal Co. 25 Oregon, 426; 36 Pac. 159.

PARKER, J.—This was a suit brought to foreclose a mechanic's lien by appellant upon a building known as the New Opera House in the City of Albuquerque. All of defendants appeared, two did not plead, two answered and two demurred which demurrers were sustained and the bill dismissed. One of the demurrers was general and to the point that the complaint failed to state facts sufficient to constitute a cause of action. The other demurrer was

special and raised the same point and the point that a claim by an architect for services in drawing plans and specifications, for which, it is alleged, there is no right to a lien, is joined with a claim for superintendence of the construction of the building and that thereby the whole lien is rendered void.

The 4th paragraph of the claim of lien is as follows: "That the labor performed upon said building by this complainant was done under a contract with said Frank P. McClure entered into about the 14th day of November, 1898, by which said Frank P. McClure employed this claimant as architect of said building and superintendent of the construction thereof; that no price was agreed upon by them as to the compensation of said claimant; that this claimant acted as architect of said building preparing the plans and drawings and specifications therefor and acted as superintendent of the construction thereof, and in all things complied with his said contract; that said building and his said contract were completed on August 1, 1899; that claimant's services were reasonably worth the sum of fifteen hundred dollars."

It thus appears that appellant claims a lien for services as architect in preparing plans, drawings and specifications, and for services as superintendent of the construction of the building, for all which services he makes the lump charge of fifteen hundred dollars. Appellees contend that there is no lien under our statute for the superintendence of the construction of a building by an architect in pursuance of plans and specifications furnished by him, and even if such a lien is within the terms of the statute, there is no lien for his services in preparing the plans and specifications. This exact proposition has never been presented to this court before. We have made a thorough examination of the authorities and are convinced that the great

weight of authority, as well as the better reasoning, is in favor of the right of the superintending architect to have his lien, under statutes like ours providing for liens for "every person performing labor," not only for his services in superintending the work, but also for his plans and specifications in accordance with which the building is erected.   Phillips Mech. Liens, Sec. 158; Boisot Mech. Liens, Sec. 116; Kneel Mch. Liens, Sec. 13a; Stryker v. Cassidy, 76 N. Y. 50; Mutual Benefit Life Ins. Co. v. Rowand, 26 N. J. Eq. 389; Bank of Pa. v. Gries, 35 Pa. St. 423; Knight v. Morris, 13 Minn. 473; Hughes v. Torgeson, 11 So. (Ala.) 209; Taylor v. Gilsdorff, 74 Ills. 354; Phoenix Furniture Co. v. Put-In-Bay Co. 66 Fed. (Ohio) 683; Gardner v. Leck, 54 N. W. (Minn.) 746; Vandorn v. Mengedoht, 59 N. W. (Neb.) 800; Parsons v. Brown, 66 N. W. (Ia.) 880; Rinn v. Electric Power Co., 38 N. Y. Sup. 345; Rara Avis Mining Co. v. Bouscher, 12 Pac. (Cal.) 433; Mulligan v. Mulligan, 18 La. Ann. 20; Arnoldi v. Gouin, 22 Grant. Ch. (Can.) 314.

*MECHANIC'S lien: architect has.*

We are cited to numerous authorities by appellees, but with the exception of a few which will be noticed hereafter, they all go to the proposition only that an architect who furnishes plans and specifications but who does not superintend the construction of the building in accordance therewith is not entitled to a lien.   Appellees cite Raeder v. Bensbury, 6 Mo. App. 445; Foushee v. Griggsby, 12 Bush, (Ky.) 75; Thompson v. Baxter, 92 Tenn. 305; 21 S. W. 688, decided by a divided court; Mitchell v. Packard, 168, Mass. 465; Ames v. Dyer, 41 Me. 397; all of which seem to support appellees' contention that there is no lien for either plans or superintendence, except Mitchell v. Packard, supra, which declares that in Massachusetts there is a lien for superintendence but not for plans.   These cases are contrary to what we consider the better doctrine and weight of authority, and we must decline to follow them.   But counsel for appellees relies principally upon the

case of Boyle v. Mountain Key Mining Co. et al., 9 N. M. 237, 50 Pac. 347. The result reached in that case was unquestionably correct, but with some of the reasoning employed therein, we do not agree as being of universal applicability to cases of this kind. We do not think that bodily toil in the form of manual labor upon the thing being constructed is in all cases necessary to entitle to a lien. And we do not understand the Supreme Court of the United States, in Mining Company v. Cullins, 104 U. S. 176, to be committed to that doctrine. In that case the lien claimant did some manual labor and the court found it unnecessary to go farther than the facts of that case required. But the court cited some of the cases cited by appellant in this case without disapproval and stated that it was not required in that case to go as far as the cases cited would warrant.

But the case of Boyle v. Mountain Key Mining Co., supra, is clearly distinguishable from the case at bar. In that case the claimant was the general manager and superintendent of a mining company, attended to all its business of every kind, including mines, mill, boarding house, ore hauling, etc., and had nothing to do with the actual mining in the mine except in the most general and indirect manner. He had foremen under his directions who did the actual mining upon the mine by means of men under their immediate control. He was thus removed from all direct contact with the actual mining in the mine and this court held, very properly, that he was not within the terms of the statute.

In the case at bar, no testimony has been taken and nothing appears as to what claimant actually did further than his claim that he superintended the construction of the building. This being the case, we assume that he performed the duties usually incident to such service. Hence we assume that he explained his plans and specifications to the mechanics who were doing the work; personally inspected every portion of the material which went into the

building from foundation to roof; saw that all work was performed in accordance with the specifications and plans; and thus came in actual, direct, personal contact with every portion of the work from its commencement to its conclusion. Under such circumstances we think he performed labor upon the building as much as the man who carried the hod, or laid the bricks, or the man who decorated the ceiling.

For the reasons stated the judgment of the lower court will be reversed, and the cause remanded with instructions to set aside the judgment dismissing the complaint, overrule the demurrers and proceed in accordance herewith, and it is so ordered.

Mills, C. J., and McFie, J., concur; Leland, J., took no part in this decision.

[872.   August 23, 1900.]

SYLLABUS BY THE COURT.