## ALEXANDER J. McDONALD *vs.* MINNEAPOLIS LUMBER COMPANY and others.

### September 15, 1881.

**Mechanic's Lien—Extent of, as to Appurtenances.**—A mechanic's lien for labor and material employed and used for the construction of a dry kiln for drying lumber is not to be extended to a saw-mill and planing-mill, owned and operated by the same parties, situated across the street from the dry kiln, and in another block, nothwithstanding the steam used in the kiln for drying lumber, and for furnishing power for the mills, is derived and transmitted from boilers situated on a lot adjoining the mills; it appearing that the kiln, though erected by the owners of the mills and boilers for drying lumber for themselves and for others, had no necessary connection with the running of the mills, but was a separate and additional branch of business. The trial court, by its decree, extended the lien to the lot on which the boilers were situated, but excluded it from the adjoining lots on which the mills were situated. *Held,* the decree went far enough, at least, in favor of the claimant, and contained no error prejudicial to him.

Appeal by plaintiff from a judgment of the district court for Hennepin county, *Vanderburgh,* J., presiding.

*Rogers & Rogers* and *W. P. Clough,* for appellant, cited *Carpenter* v. *Leonard,* 5 Minn. 119 (155.)

*Cross & Hicks* and *W. D. Cornish,* for respondents.

CLARK, J. The main question in this case, and the only one necessary to be considered, is, whether a mechanic's lien, for labor and materials employed and used in the construction of a dry kiln for drying lumber, can be properly extended to a saw-mill and planing-mill, and the lots on which they stand, as being appurtenant to the latter.

The facts as found by the trial court, so far as they bear upon this question, are as follows: The Minneapolis Lumber Company were the owners of lots 1, 2 and 3, in block 30, of Bottineau's addition to St. Anthony, and had erected thereon, and in operation, a saw-mill and planing-mill, when they decided to construct the dry kiln. The

planing-mill was upon lot 1; upon lot 2, next and adjoining, was situated the boiler-house, built of brick, containing the steam-boilers; and next adjoining was the saw-mill, situated wholly on lot 3, and containing the engine, which was supplied with steam from the boilers on lot 2. The planing-mill was run by power communicated from the engine in the saw-mill, by shafting and other appliances. The dry kiln was built by the lumber company for the purpose of drying both their own lumber and that of other people who might employ them to do such service, and was situated on lots 7, 8 and 9, in block 28, of Bottineau's addition, and directly across the street from the saw-mill. The lumber company had a leasehold interest in the lots on which it was erected, with the privilege of purchasing them. The process of drying in said kiln was through the agency of steam, and a pipe, permanently connected with one of the boilers in the boiler-house, conducted steam to the kiln, and the kiln had no other necessary connection with the saw-mill proper than that the same boiler furnished steam for both, but might furnish for one and not for the other, as circumstances required. "The steam furnished by said boiler was necessary for conducting the business of said kiln, and said kiln was constructed at said place to be run in connection with said boiler, and the same are necessarily connected together as one establishment for the purposes of said business." The dry kiln was a separate venture, made and undertaken after the completion and operation of the saw-mill, and was conveniently placed for use in connection with it, and was for a time used by the lumber company in drying lumber manufactured for themselves and others at the saw-mill. It "had no necessary connection with the saw-mill or engine or planing-mill, or the running of the same, but was a separate and additional branch of business, to be conducted as circumstances might demand."

The plaintiff claims that the dry kiln is, under these circumstances, to be considered as an appurtenance to the mills; and that his lien should extend to the lots, 1, 2 and 3, in block 30, and the structures and machinery thereon. The decree of the court awarded him a lien on all the lumber company's interest in lots 7, 8 and 9, of block 28,

and also on lot 2 of block 30, with all the structures, apparatus and machinery erected thereon, and excluded him from any lien on lots 1 and 3 of block 30. The question arises between the plaintiff, on the one side, and the lumber company, a claimant of a mechanic's lien on lot 1, in block 30, and mortgagees of lots 1, 2 and 3, in block 30, whose liens are subordinate to the plaintiff's lien, if any, on the other side.

The statute reads as follows: "Whoever performs labor, or furnishes materials or machinery, for erecting, constructing, altering or repairing any house, mill, manufactory, or other building or appurtenances, * * * shall have a lien to secure the payment of the same upon such house, mill, manufactory, or other building or appurtenances," etc. Gen. St. 1878, c. 90, § 1. We are of opinion that, under the circumstances in the finding of the court, the dry kiln is not to be considered as appurtenant to the mills, so as to extend the plaintiff's lien to the same, and the lots on which they are situated. It was not necessary to the business of sawing logs or dressing lumber, and the operation of the dry kiln is expressly found to be a separate and additional branch of business; nor was there any such physical connection as to unite the dry kiln and the mills as one property. The mills were run and operated without aid from the kiln, and the kiln without aid from the mills.

The circumstance that the steam required for the operation of both was derived from a common source is not entitled to much weight. The steam connection of the kiln with the boilers might be taken away without any injury to the operation of the mills, and the steam required for the kiln might be supplied from another source. Suppose the lumber company should convey lots 1, 2 and 3, in block 30, with all the appurtenances. It could not reasonably be contended that the lots across the street, upon which the kiln is situated, would pass as appurtenant, because land never passes as appurtenant to land, but only incorporeal rights. 3 Washburn on Real Prop. (4th Ed.) 394. Or, to bring the matter still closer, suppose the lumber company should convey the saw-mill and planing-mill, with their appurtenances, by that general description, simply identifying the

mills, but without making reference to the lots, or any metes and bounds. By such a grant, not only the structures, but the lands under them, and so much of the land about them as was necessary for their operation and commonly used with them, would pass, not as appurtenant to any thing, but as being, within the intention of the parties, included in the description. 3 Washburn on Real Prop. (4th Ed.) 396. In such case, it is quite clear, neither the lots across the street nor the structure thereon would pass, because they are not necessary to the operation or beneficial enjoyment of the mills, and are not commonly used with them. The sense of the matter is that the mills and the kiln, and the branches of business carried on therein, are too separate and distinct to be regarded as appendages or appurtenances of each other, within the meaning of the law. With the present facilities of transmitting steam and steam-power, it would be dangerous, and might lead to strange and unfortunate results, to hold that properties are to be regarded as appurtenant to each other from the fact that they are used in different branches of the same business, which may be carried on separately, and derive the steam or power necessary to carry them on from a common source. We think the extension of the plaintiff's lien to lot 2 of block 30, on which the boilers are situated, was going at least far enough, and that if there is any error in the judgment it is not to the prejudice of the appellant.

Judgment affirmed.