[Civil No. 170.   Filed January 19, 1887.]

[S. C. 12 Pac. 694.]

E. O. FECHET, Plaintiff and Respondent, v. CHARLES P. DRAKE, Assignee, Defendant and Appellant.

1. MORTGAGES—ELECTRIC LIGHT PLANT—POLES AND WIRES AS FIX-TURES—FIXTURES DEFINED—EXCEPTIONS IN FAVOR OF TENANTS AND TRADE DO NOT CHANGE RULE—QUICQUID PLANTATUR SOLO, SOLO CEDIT REMAINS THE RULE AS BETWEEN VENDOR AND VEN-DEE AND MORTGAGOR AND MORTGAGEE—A CHATTEL MAY BE A FIX-TURE THOUGH OFF THE LAND—MORTGAGE CONVEYED LOT WITH MACHINERY AND APPURTENANCES—LANGUAGE COVERED ELECTRIC CURRENT AS APPURTENANCE EVEN THOUGH NOT A FIXTURE— WHETHER CHATTEL BE FIXTURE OR APPURTENANCE IN EACH CASE CONCLUSION IS MIXED ONE OF LAW AND FACT TO BE DETERMINED FROM INTENTION OF PARTIES AND USES TO WHICH CHATTEL IS DEVOTED—IN THIS CASE CHATTEL BECAME PART OF REALTY AND

PASSED WITH MORTGAGE.—An electric light plant was placed upon a certain lot and poles and wires for the purpose of delivering the current generated thereby were placed upon the streets of the city. The lot was mortgaged, "together with all machinery, including the boiler, engine and dynamo now situated on said land, and together with all and singular the tenants, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining." It is urged that the said wires are a fixture to the lot, and as such pass with the mortgage A fixture is an article which was a chattel, but which, by being physically annexed or affixed to the realty, became accessory to it, and a part and parcel of it. The fact that there are exceptions to the rule in favor of tenants as against landlords, and in favor of trade, does not change the definition. *Quisquid plantatur solo, solo cedit,* the maxim of the common law, as between vendor and vendee, and mortgagor and mortgagee remains today unchanged. The later and better doctrine does not require an actual fastening to the soil as essential to making a chattel a fixture. It may be a fixture even though off the land. The electric current is an appurtenance to the machinery situated on the lot, and is therefore covered by the language of the mortgage even though not a fixture. Whether a particular chattel has become a "fixture" or an "appurtenance" is a mixed question of law and fact, largely to be determined by the intention of the parties, and the uses to which the chattel is devoted. In this case it was the evident intention of the parties to make this electric current a part of the machine mortgaged and attached to the land,—to become a part of the realty. Held that the chattel so attached passed with the mortgage.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. Affirmed.

The facts are stated in the opinion.

Hereford & Lovell, and T. L. Stiles, for Appellant.

If this circuit passed, under the mortgage at all, it did so either as a fixture or an appurtenance. It was not an appurtenance. The term "appurtenance" refers only to the incorporeal right to use a thing upon, or in connection with land. Hilliard on Real Property, II, 357. But machinery is never an "appurtenance". When it is so nearly identified with the land as to become a part of it, it is called a fixture. Here, however, we maintain that no case can be found where

what would be a "fixture" upon land, has been held to be
so when it is found or used off the land. The definition of a
fixture by the Civil Code of California, Section 660, which
is declaratory of a common law "fixture", is as follows:
"A thing embedded in it (*i. e.* land), as in the case of walls,
or permanently resting on it, as in the case of buildings, or
permanently attached to what is thus permanent, as by means
of cement, plaster, nails, bolts, or screws." See *Buckout* v.
*Swift,* 27 Cal. 433, 87 Am. Dec. 90. From *Stillman* v. *Flanni-
gen,* Iowa Dec. 1881, Albany Law Journal, Vol. 25, p. 417,
we quote what is the established general rule: "Things
personal in their nature, but fitted and prepared to be used
with real estate, and essential to its beneficial enjoyment.
being on the land at the time of its conveyance by deed,
pass with the realty. The rule is the same whether the sale
is by the owner, or by a public officer under the law." But
this rule is not always followed with strictness. See Over-
ton on Liens, pp. 416-7; *Teaff* v. *Hewitt,* 1 Ohio St. 511; Al-
bany Law Journal, Vol. 24, p. 302; *Coburn* v. *Ames,* 52 Cal.
385, 28 Am. Rep. 634; Jones on Mortgages, Sec. 1462.

Alex. Campbell, and C. C. Stephens, for Respondents.

A bill to quiet title can be maintained for any kind of
personal property which possesses a *quasi* real character;
such property as would be known as mixed property at com-
mon law. Boone on Mortgages, Sec. 104, p. 140; Ewell on
Fixtures, pp. 20, 21, 22, 46, 47, and 49; 3 Wait's Actions
and Defenses, Chap. 69, p. 368, and *seq;* 1 Jones on Mort-
gages, Secs. 441, 444, 446, 448, and especially 450, 451; *Sands*
v. *Pfeiffer,* 10 Cal. 259; *Merritt* v. *Judd,* 14 Cal. 59; *Hawes* v.
*Lathrop,* 38 Cal. 493; *Fratt* v. *Whittier,* 58 Cal. 126 and
130. As to what is actual annexation to the realty or some-
thing appurtenant thereto, we fill the requirement. As to
the uses or purposes to which that part of the realty with
which it is connected is appropriated, we fill that requirement
exactly. As to the intention of the party making the annexa-
tion to make a permanent accession to the freehold, we fill
that requirement exactly and completely. These are the three
great tests. Counsel for defendant called for an authority

where that portion of the machinery used to communicate power ever passed with the realty. We furnish it with the citation of several authorities on page 142 of Boone on Mortgages; *Keeler* v. *Keeler,* 31 N. J. Eq. 181; *Ottumwa Woolen Mill Co.* v. *Hawley,* 44 Iowa, 57, 24 Am. Rep. 719; *Coleman* v. *Stearns Mfg. Co.,* 38 Mich. 30; *City of Brooklyn* v. *Nodine,* 26 Hun. 514; Boone Real Prop. Sec. 9.

BARNES, J.—Plaintiff in this case seeks to quiet title to real estate mentioned in his complaint. He derives his title from a judgment sale under a decree of foreclosure of a mortgage. The mortgage was executed August 8, 1883, and the sheriff's sale under a decree of foreclosure was made June 2, 1885, and, after time of redemption had expired, a deed was executed and delivered. On April 1, A. D. 1885, defendant became the assignee in insolvency of the mortgagee.

The question in this case is whether the property in question passed by the mortgage, or remained in the mortgagor, and passed by the assignment, under the insolvency proceedings, to defendant, Drake. The record shows that an electric light company had been organized, and was engaged in lighting the city of Tucson by that means; that in 1883 the company purchased lot 2, in Tucson, of one Wilkins, for the purpose of placing and constructing an electric plant thereon so as to light said city thereby; that, after the purchase of said lot, such plant was constructed, including boilers, engines, dynamo, and, as a necessary, integral, and ordinary part of such plant, there was erected in the streets of the city 18 masts, and wires were strung thereon, along which the electric light current ran so as to conduct the same to the electric lamps located in the different parts of the city, and so light the same. The said wires, so strung, were attached to the building on said lot, and to the dynamo therein, and thereby the current was completed. To cut the wires, or by any means destroy such connection, rendered the whole plant useless for that purpose. The mortgagee conveyed said lot, "together with all machinery, including the boiler, engine, and dynamo now situated on the said land, and together with all and singular the tenements, hereditaments and appurte-

nances thereunto belonging, or in anywise appertaining.''
The only question here is whether, by this mortgage, there
passed to the mortgagee the wires so strung along said masts.
Defendant insists that the same did not pass, and that he
may cut such wires, and treat the same as the personal prop-
erty of the mortgagor.  Plaintiff insists that the whole plant,
including the wires so strung, passed by the mortgage.

This raises a very important question.  It is urged that
the said wires are a fixture to the lot, and as such pass by
the mortgage.  There is great confusion in the books in the
definition of the term ''fixtures.''  It is held to denote ''such
articles of a chattel nature as, when once annexed to the
realty, may not be removed by the party annexing them, as
against the owner.''  Ewell, Fixt. 1, and cases cited.  On
the other hand, just the reverse is held to be the true defini-
tion; that is, chattels annexed that may be removed, etc.
Ferard, Fixt. 2, and cases cited.  It is difficult to determine
in which of the above senses it is most frequently employed.

''A fixture is an article which was a chattel, but which,
by being physically annexed or affixed to the realty, became
accessory to it, and a part and parcel of it.''  This definition
is sustained by all the authorities.   Amos & F. Fixt. 11.
''Things fixed in a greater or less degree to the realty.''   2
Kent, Comm. 345, note *a*.  ''Anything annexed to the free-
hold.''  2 Smith, Lead. Cas. 239, note.  In *Teaff* v. *Hewitt*,
1 Ohio St. 511, 59 Am. Dec. 634, the court discuss this whole
question:   ''The term 'fixture', in the ordinary signification,
is expressive of the act of annexation, and denotes the change
which has occurred in the nature and legal incidents of the
property; and it appears to be not only appropriate, but
necessary, to distinguish this class of property from movable
property possessing the nature and incidents of chattels.''

The fact that there are exceptions to the rule in favor of
tenants as against landlords, and in favor of trade, does not
change the definition.  *Quicquid plantatur solo, solo cedit*,
was the maxim of the common law; and, as between vendor
and vendee, and mortgagor and mortgagee, remains to-day
unchanged.   Co. Litt. 53; 2 Smith, Lead. Cas. 114; 2 Kent,
Comm. note *a*, 345; *Elwes* v. *Maw*, 3 East, 57.   Whichever
definition may be regarded best, all concur that, where the

chattel is "fixed" or "annexed" physically to the soil, it becomes a part of the realty.

The electric light current was affixed to the soil as firmly as the nature thereof would permit. It was attached physically to it, and became a part of the fixed machinery. To that extend this electric light current is a fixture. But is is contended that, while this is so, yet that a fixture must be on the land, and that that may not be a fixture which is off the land.

A case is cited holding that, where an engine was on one lot, and connected with a machine on another lot, that the machine on each lot is a fixture on the lot on which it is constructed. *McDonald* v. *Minneapolis Lumber Co.*, 28 Minn. 262, 9 N. W. 765. That is not this case. Here one lot is devoted to the maintenance of an electric light plant. Upon it are erected buildings, and in them are placed motive power and dynamo by which an electric current is to be created, and from the same led by means of wires annexed thereto, and running out of the building, strung on poles set up in the streets of the city, through the city, to points where this light is needed, and, returning by the same means, are so connected with the dynamo as to complete the circuit, and so make effectual the operation of a machine of which it is an integral and necessary part. It has a "right of way" along the streets of the city, which is no more than a mere license, and the license is subject to the public use of the streets, and in no way affects the fee to the same. Such use of the streets is a public use, and the power to grant such use is to be found in the same powers that grant the use of the streets to railway companies, gas companies, water companies, and the like. The mortgage or sale of a railway would carry its tracks laid in or across a highway annexed to its tracks, on its exclusive right of way, or even its locomotives and cars thereon. Rolling stock of a railway is a part of the realty where a railroad is mortgaged, though used on lines not included in the mortgage. *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, and see note to this case.

The later, and we think the better, doctrine does not require an actual fastening to the soil as essential to making a chattel a fixture. The third rule stated by Mr. Carpenter (2

Wall. 646) is sustained by these authorities: "If the thing be essential to the use of the real estate, and has uniformly been used with it, then it passes, though not fastened to it." *Farrar* v. *Stackpole*, 6 Greenl. 157, 19 Am. Dec. 201; *Snedeker* v. *Warring*, 12 N. Y. 170; *Pierce* v. *Emery*, 32 N. H. 484; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Peoria etc. R. R. Co.* v. *Thompson*, 103 Ill. 209.

The electric current, including wires, poles, insulators, and appliances, was an essential part of the machine. To sever it was to destroy it. The object of the law is to preserve, and not to destroy. A machine made of many parts, operated for a useful purpose, may have great value. Sever the parts, and they are each comparatively worthless. And it is the duty of the courts, so far as may be, to so construe the law that the usefulness and value of such property be maintained. In *Regina* v. *North Staffordshire Ry. Co.*, 3 El. & El. 392, Lord Cockburn held that telegraph apparatus, consisting of posts driven into the ground, and wires passing through sockets annexed to the posts, but which wires might be disconnected from the posts without injury, or displacing them, were a part of the appliances of the defendant railway company, and were fixtures, as they were so attached that it was intended that they should remain permanently connected with the railway, or the premises used with it, and remain permanent appendages to it as essential to its operation. Such is this case.

We have so far considered this as though it were an ordinary conveyance of the lot, but the mortgage conveyed the lot, "together with all the machinery, including the boiler, engine, and dynamo now situated on said lot, and together with all and singular the tenements, hereditaments, and appurtenances thereto belonging, or in anywise appertaining."

In *Pickerell* v. *Carson*, 8 Iowa, 544, a sale of "the fixtures and appurtenances contained in the daguerreian rooms," etc., embraced all such property as was used in carrying on the business, such as maps, pictures, stove, carpet, apparatus and furniture, machines and stock, as appurtenances, and sky-light, balcony, partition, etc., as fixtures.

The electric current is, then, an appurtenance to the machinery situated on that lot, and is therefore covered by the

language of the mortgage, even it not a fixture. Extra rolls in a rolling-mill, removable at pleasure, were held to be a part of the realty as appurtenant to it. *Pyle* v. *Pennock,* 2 Watts & S. 390, 37 Am. Dec. 517. A statue and a sun-dial also. *Snedeker* v. *Warring,* 12 N. Y. 170; *Wadleigh* v. *Janvrin,* 41 N. H. 503, 77 Am. Dec. 780. A mortgage of a railway, with its appurtenances and franchises, includes its rolling stock, tools, and all movable property used in its operation. *Peoria etc. R. R. Co.* v. *Thompson,* 103 Ill. 209.

The ingenuity of invention, creating new appliances for usefulness, constantly brings new facts for the consideration of the courts; and to these established principles must be applied. To determine whether a particular chattel has become a "fixture" or an "appurtenance" we must be guided by authority. A consideration of the authorities leads to the conclusion that in each case it is a mixed question of law and fact, largely to be determined by the intention of the parties, and the uses to which the chattel is devoted. In this case it was the evident intention of the parties to make this electric current a part of the machine mortgaged and attached to the land,—to become a part of the realty. We hold, therefore, that the chattel so attached passed with the mortgage.

The judgment is affirmed.

Porter, J., concurs.