GARRYT D. MITCHELL *vs.* WILLIAM A. PACKARD.

Norfolk.   March 29, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Lien of Architect for Preparation of Building Plans and Supervision.*

A lien may be maintained by an architect, under Pub. Sts. c. 191, § 1, for labor performed by him in the supervision of the erection of a building, but not for the preparation of plans and specifications therefor.

PETITION by an architect to enforce a lien, under Pub. Sts. c. 191, for the preparation of plans and specifications, and for the supervision of the erection of a building.   Hearing in the Superior Court, without a jury, before *Dunbar*, J., who found that the usual and ordinary charge for the services of an architect in the preparation of plans and specifications and the supervision of the erection of a building is five per cent upon the actual cost of the building, of which three and one half per cent is for the

preparation of plans and specifications, and the remaining one and one half per cent is for the supervision. The judge ruled that the petitioner was entitled to maintain his lien for his services of supervision, and established the lien at $73.27, which was one and one half per cent of the amount actually expended upon the building. To this ruling both parties excepted, and, at their request, the judge reported the case for the determination of this court. If the ruling was right, the petitioner's lien was to be established for $73.27; otherwise, there was to be a new trial.

*R. Lund,* ( *C. F. Atwood Smith* with him,) for the petitioner.

*J. J. Higgins,* ( *W. M. McInness* with him,) for the respondent.

KNOWLTON, J. The questions presented by this case are, first, whether an architect, who has drawn plans and prepared specifications for the construction of five houses under a contract to draw the plans and specifications and supervise the construction of the houses, and who has supervised the construction of one of the houses until it was about half completed, and supervised the work of putting in the foundations of two of the others, involving an expenditure of about forty dollars upon one, and about fifteen dollars upon the other, can have a lien under the Pub. Sts. c. 191, for the whole amount due him; and secondly, if he cannot, whether he can have a lien for the value of his services in supervising the work upon the buildings, considered apart from the preparation of the plans and specifications.

The statutes of the different States in regard to mechanic's liens differ materially in their provisions, and the cases show a considerable conflict of authority upon the questions before us. But we are of opinion that, under statutes similar to ours, the weight of judicial opinion is in favor of holding that the services of an architect in preparing plans and specifications for a building are not the kind of labor intended to be protected by the statute, and, on the other hand, that services upon a building in supervising the work of construction enters directly into the construction so as fairly to be called " labor performed or furnished . . . and actually used in the erection " of a building, within the meaning of these words in § 1 of the statute above cited. It is also generally held that the fact that one who does such work is an architect does not prevent him from recovering for this kind of service, which is often performed by an intelligent me-

chanic. This is the doctrine of the highest court in Pennsylvania, where the provisions of the statute are similar to ours. *Price* v. *Kirk*, 90 Penn. St. 47. *Rush* v. *Able*, 90 Penn. St. 153. *Bank of Pennsylvania* v. *Gries*, 35 Penn. St. 423. Under a like statute in Missouri, it was held in *Raeder* v. *Bensberg*, 6 Mo. App. 445, that the services of an architect " in drawing plans and specifications and giving directions to the builder under whose special superintendence the house is being erected cannot be called, in any proper sense of the words, ' work or labor upon the building.' " A similar decision was made in *Foushee* v. *Grigsby*, 12 Bush, (Ky.) 75. *Ames* v. *Dyer*, 41 Maine, 397, was a case arising under a statute giving a lien for labor performed, or materials furnished " for or on account of any vessel building or standing on the stocks," etc., and the attempt was to establish a lien for a mould constructed and used to form the timbers for a ship. The court said that " the plan of a house, the model of a ship, the moulds by which its timbers are to be hewed, may be necessary and even indispensable, but they do not enter into any structure so as to be a part of its materials, and cannot be regarded as within the provision of the statute."

The liens with which we are dealing are commonly called mechanic's liens in the statutes and opinions, and we have no doubt that the primary purpose of the Legislature in providing for them was to protect persons engaged in manual labor, as distinguished from those in the learned professions, or others whose activities are chiefly mental. We do not mean to say that the terms of our present statute exclude those whose mental labor is expended directly upon the construction of the building itself, and who do little with their hands, but they are not primarily within the consideration of the Legislature. The St. 1851, c. 343, is entitled " An Act to secure to mechanics and laborers their payment for labor, by a lien on real estate." The St. 1852, c. 307, embraces the same purpose in its title, while the St. 1855, c. 431, is entitled " An Act to secure to mechanics and others payment for labor and materials by them expended." While these statutes have been extended by subsequent legislation so as to include labor furnished, as well as labor performed, there is no indication in the legislation of a purpose to change the meaning of the word " labor." See *Crowell* v. *Cape Cod Ship Canal Co.*,

*ante*, 157; *Pennsylvania & Delaware Railroad* v. *Leuffer*, 84 Penn. St. 168; *Ericsson* v. *Brown*, 38 Barb. 390.

The preparation of plans and specifications is a preliminary to the construction of a building, and is often merely tentative. It may or may not be followed by a construction according to the plans. It is seldom that either the external or internal form of a building is determined upon, or that its identity is anything more than an indefinite mental conception until after the plans have been completed. We are of opinion that this professional work of the architect, in bringing into existence the definite form and conception of a building which may be erected if the landowner adopts the plan, is not " labor performed or furnished . . . and actually used in the erection " of a building, within the meaning of our statute.

We are of opinion that the work of supervision which is done directly upon the building, and which is partly physical, but in its more important part mental, may be the subject of a lien under our statute, even if done by the same person who prepared the plans as an architect. Where such work is done under an entire contract for a round sum, which covers compensation for other work which is not the subject of a lien, it may be difficult to separate the part of the price which belongs to this work from that which belongs to the other, and in such a conceivable case it might be impossible to establish a lien for anything. In the present case, no sum was agreed upon for the whole or for any part of the petitioner's services, and the judge has found that a certain price is ordinarily allowed in such cases for supervision.

*Judgment on the finding.*