CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK et al. v.
NORTH PLATTE VALLEY IRR. CO. et al. (two cases).

Circuit Court of Appeals, Eighth Circuit.  January 4, 1915.)

Nos. 4249 and 4261.

1. MECHANICS' LIENS ⬳38—LIEN FOR SERVICES—SUPERINTENDENCE.
    Under Comp. St. Wyo. 1910, § 3799, providing that every mechanic or
    other person performing any work or labor upon or furnishing any ma-
    terial, etc., for any building, erection, or improvement shall have a lien
    for his work, labor, or materials, etc., the superintendent and engineer in
    charge of the construction of a plant who, besides the work of superin-
    tending such construction, also performed work and labor was entitled
    to a lien for his salary, especially as the old doctrine that lien statutes,
    being in contravention of the common law, must be strictly construed has
    given way to a more liberal doctrine for the purpose of carrying out the
    purposes of such statutes, and the tendency of modern decisions is to-
    ward allowing liens to engineers and architects designing and superin-
    tending the construction of improvements.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 42;  Dec.
    Dig. ⬳38.]

2. MECHANICS' LIENS ⬳260—ENFORCEMENT—STATUTORY LIMITATIONS—COM-
    MENCEMENT OF SUIT.
    Within the Wyoming statutes, providing that materialmen's liens shall
    cease to exist six months from the filing thereof unless within that time
    an action shall be commenced and prosecuted without delay to final judg-
    ment, where a lienor was brought in as a defendant in a suit to foreclose
    a trust deed and filed a cross-bill, and the mortgagor's officers testified as
    to the validity of the lien, the filing of the cross-bill was equivalent to the
    commencement of a suit, though no process thereon was issued, especially
    in view of equity rule 30, providing that a defendant may state in short
    and simple form any counterclaim against the complainant which might
    be the subject of an independent suit against him, and that such coun-
    terclaim shall have the same effect as a cross-suit so as to enable the
    court to pronounce final judgment in the same suit on the original and
    the cross claims.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 456,
    458–468; Dec. Dig. ⬳260.]

3. MECHANICS' LIENS ⬳132—PROCEEDINGS TO PERFECT—TIME FOR FILING
    LIEN—COMPLETION OF CONTRACT.
    Within the Wyoming laws, requiring lien statements to be filed by ma-
    terialmen within 90 days from the accrual of the indebtedness, where
    though the last cement furnished by a materialman in car load lots was
    furnished on June 8, 1911, five barrels were delivered on June 15, 1912,
    pursuant to the old arrangement, and not for the purpose of renewing a
    lien which had been lost, and there was testimony that the account with
    the lienor had been open continuously until June 15, 1912, the statement
    was properly filed within 90 days from that time, especially as the en-
    tirety of a running account does not depend upon the length of time be-
    tween the last items, but on whether the material is furnished for the
    same general purpose.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190,
    192–207;  Dec. Dig. ⬳132.]

4. CORPORATIONS ⬳482—DEED OF TRUST—CLAIMS—PRIORITY OF DEEDS.
    In a suit to foreclose a corporate deed of trust a court of equity had no
    authority to establish equitable liens superior to the lien of the trust
    deed, where the claims did not occur within six months prior to the ap-

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pointment of a receiver and were not for operating expenses and there had been no diversion of income.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

5. CORPORATIONS ☞480—MORTGAGES—PRIORITY BETWEEN MORTGAGE AND ME-CHANICS' LIENS.

An irrigation company, at the date of a deed of trust on its property, had completed a gravity system for the distribution of water, consisting of a reservoir and canals, and was contemplating the construction of a hydroelectric plant for irrigating land which, on account of its elevation. could not be irrigated by the gravity system. The hydroelectric system subsequently constructed consisted of pipe lines, a power house, a trans-mission line, and a pumping station, the dam of the gravity system not being touched in any way except to connect one of the pipe lines there-with. The deed of trust covered property thereafter acquired or con-structed. *Held*, that under Comp. St. Wyo. 1909, § 3799, giving every per-son performing work or furnishing material, etc., for any building, erec-tion, or improvement on land a lien on such building, erection, or im-provement and on the land belonging to the owner to the extent of one acre or in a town, city, or village on the lot of land upon which the build-ing, erection, or improvement is situated, and section 3801, providing that such lien shall attach to the building, erection, or improvements for which the materials were furnished or the work done in preference to any prior lien, incumbrance, or mortgage, persons performing labor and fur-nishing materials for the construction of the different units of the hydro-electric system did not acquire a lien on the dam, or any part of the gravity system, superior to the lien of the deed of trust, but if given a superior lien on the entire hydroelectric system, would be liberally treated.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ☞480; Mort-gages, Cent. Dig. §§ 290–323, 326–455.]

6. CORPORATIONS ☞482—FORECLOSURE OF MORTGAGES—DISPOSITION OF PRO-CEEDS—HEARING.

In a suit to foreclose a deed of trust on the property of an irrigation company which would be best sold as an entirety, but upon a part of which there were certain liens superior to the deed of trust, the court should have granted the parties a hearing and from the evidence pro-duced thereon should have determined the value of the property as a whole and the value of the part upon which there were such superior liens as a basis for the distribution of the proceeds of a sale between the lienors and the mortgagee, instead of using an ex parte appraisement of the property by appraisers appointed by it as a basis for such distribu-tion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

7. CORPORATIONS ☞482—FORECLOSURE OF MORTGAGES—SALE.

Where a deed of trust given by an irrigation company covered its gravity system for the distribution of water consisting of a reservoir and canals, and also a hydroelectric system, used for irrigating land, which could not be irrigated by the gravity system, consisting of pipe lines whereby water was conducted from the gravity system dam to a power house and used in generating electric power transmitted by wires to a pumping station, used to elevate water to the high land, though there were liens for labor and materials on the hydroelectric system superior to the lien of the deed of trust, upon a foreclosure of the mortgage the prop-erty should be sold as a whole, as a purchaser of the gravity system would have the power to render the electric system worthless if they were sold to different parties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit to foreclose a deed of trust by the Continental & Commercial Trust & Savings Bank, as trustee, and others against the North Platte Valley Irrigation Company and others. From a decree of foreclosure and from an order denying an application to modify the decree, complainants appeal. Appeal from order dismissed. Decree modified and affirmed.

Charles L. Powell, of Chicago, Ill., and Eldon Bisbee, of New York City (Levy Mayer, of Chicago, Ill., and William C. Kinkead, of Cheyenne, Wyo., on the brief), for appellants.

John D. Clark, of Cheyenne, Wyo. (Gibson Clark, of Cheyenne, Wyo., on the brief), for appellees O. L. Walker Lumber Co., Wagner Electric Mfg. Co., and Otto H. Falk, as receiver of Allis-Chalmers Co.

William W. Grant, Jr., of Denver, Colo. (Ernest Morris, of Denver, Colo., on the brief), for appellees Fred W. Hart, Hendrie & Bolthoff Mfg. & Supply Co., C. P. Allen General Contracting Co., Colorado-Portland Cement Co., Pioneer Iron & Wire Works Co., Florence Hardware Co., and W. A. Rawlings.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. The bill in this case was filed by appellants to foreclose a trust deed made and executed by the North Platte Valley Irrigation Company, a Wyoming corporation, hereinafter called the Irrigation Company, on December 18, 1909, to secure an authorized bond issue of $2,000,000. A decree of foreclosure was entered February 9, 1914. From this decree appellants appealed, and that appeal is numbered 4249. There was an application to modify the decree of foreclosure, which was denied, and a separate appeal was taken from the order of denial, and that appeal is numbered 4261. If the decree was right so was the order refusing to modify the same, and as the record in appeal No. 4261 has been consolidated with that of No. 4249, the appeal in No. 4261 may be dismissed, as all matters in controversy may be considered on the appeal from the main decree. The complaint of the appellants concerning the decree of foreclosure grows out of the establishment in the decree of certain statutory liens as superior to the liens of the trust deed. Complaint is also made of the manner of sale and the way in which the decree provides that an appraisal of the property shall be made for the purpose of fixing a basis for the distribution of the proceeds of the sale. As the liens are the cause of the controversy, it is perhaps best to first consider the objections of the appellants thereto, reserving for subsquent discussion the question as to what property the several liens held to be valid ought to cover. It was adjudged that the C. P. Allen General Contracting Company had a statutory lien under the laws of Wyoming superior to the lien of the trust deed in the sum of $20,438.47 on what in this opinion may be called for the sake of brevity, the dam, power house, wood stave pipe line,

pumping station, steel pipe line, and poles erected for the transmission line. The amount of this lien was a balance due upon a contract to construct the "wood stave pipe line" for $48,000. It is contended that as all the material furnished and work performed under this contract was for the construction of the wood stave pipe line, the lien should be restricted to that structure. As this same question arises as to some of the other liens, the discussion thereof will be postponed until the objections to all the several liens, as liens, have been stated.

[1] It was adjudged that Fred W. Hart had a statutory lien, under the laws of Wyoming, superior to the lien of the trust deed in the sum of $10,374.14 on the dam, power house, wood stave pipe line, pumping station, steel pipe line, and poles erected for the transmission line. Hart was superintendent and engineer in charge of the construction of the so-called "hydroelectric plant" which with the exception of the dam was composed of the structures hereinbefore mentioned. His salary was $10,000 per year. Besides the work of superintending the construction of the system, he performed work and labor. It is contended that he is not within the Wyoming statute, which provides that:

"Every mechanic or other person who shall do or perform any work or labor upon * * * any building, erection or improvement * * * shall have for his work or labor done * * * a lien upon such building, erection or improvement."

There is a conflict of authority upon the subject as to whether a person in the position of Hart is entitled to a lien under statutes similar to the one above mentioned. In Massachusetts an engineer or architect cannot secure a lien for plans, but may for superintendence, and where services in these two capacities cannot be distinguished, the lien is lost. Mitchell v. Packard, 168 Mass. 465, 47 N. E. 113, 60 Am. St. Rep. 404. In Iowa, Wisconsin, and Nebraska the lien is upheld for plans alone without supervision. Parsons v. Brown, 97 Iowa, 699, 66 N. W. 880; Fitzgerald v. Walsh, 107 Wis. 92, 82 N. W. 717, 81 Am. St. Rep. 824; and Henry v. Halter, 58 Neb. 685, 79 N. W. 616.

It seems, however, that the tendency of modern decisions is toward allowing liens to engineers and architects designing and superintending the construction of improvements. Wetzel Ry. v. Tennis, 145 Fed. 458, 75 C. C. A. 266, 7 Ann. Cas. 426; Trust Co. v. Richmond (C. C.) 54 Fed. 723; Cascaden v. Wimbish, 161 Fed. 241, 88 C. C. A. 277; Phœnix Furn. Co. v. Hotel Co. (C. C.) 66 Fed. 683; Hughes v. Torgerson, 96 Ala. 346, 11 South. 209, 16 L. R. A. 600, 38 Am. St. Rep. 105; and Alvord v. Hendrie, 2 Mont. 115.

The following are cases in which architects have been allowed liens under statutes similar to that of Wyoming: Mulligan v. Mulligan, 18 La. Ann. 20; Insurance Co. v. Rowland, 26 N. J. Eq. 389; Gardner v. Leck, 52 Minn. 522, 54 N. W. 746; Knight v. Norris, 13 Minn. 473 (Gil. 438); Van Dorn v. Mengedoht, 41 Neb. 525, 59 N. W. 800; Field v. Water Co., 25 R. I. 319, 55 Atl. 757, 105 Am. St. Rep. 895; and Stryker v. Cassidy, 76 N. Y. 50, 32 Am. Rep. 262.

Appellants claim that it was decided in Wyman v. Quayle, 9 Wyo. 326, 63 Pac. 988, that Wyoming took her mechanic's lien statute from Missouri, and that in Blakey v. Blakey, 27 Mo. 39, the Supreme Court of Missouri had held prior to the adoption of the statute by Wyoming that a superintendent at a stated salary to superintend the work of others was not entitled to a lien. An examination of that case, however, shows that all that was decided was that where a builder took a contract for the erection of a house, he could not maintain a lien for superintending his own workmen. Edgar v. Salisbury, 17 Mo. 271, simply held that where lienable and nonlienable charges were stated together in one charge, so that it was impossible to ascertain how much was lienable, the entire lien would be lost. Murphy v. Murphy, 22 Mo. App. 18, was disposed of on the same point, and Nelson v. Withrow, 14 Mo. App. 270, followed Blakey v. Blakey, supra. The old doctrine that these lien statutes, being in contravention of the common law, must be strictly construed has given way to a more liberal doctrine, in modern times, for the purpose of carrying out the purposes of the statute. Upon full consideration of the authorities bearing upon the question, we are of the opinion that a liberal construction of the Wyoming statute requires us to hold that Hart is entitled to a lien, the extent thereof to be hereafter discussed.

[2] It was adjudged that the Hendrie & Bolthoff Manufacturing & Supply Company had a statutory lien under the laws of Wyoming superior to the lien of the trust deed in the sum of $4,606.57, on the dam, power house, wood stave pipe line, pumping station, steel pipe line, and poles erected for the transmission line. The material furnished by this company went into the power house, the pumping station, and transmission line. Under the Wyoming law these statutory liens cease to exist after six months from the date of the filing of the same, unless within that time an action shall be commenced and prosecuted without delay to final judgment. The lien of this claimant was filed August 26, 1912. It answered the bill in this case and filed a cross-bill on December 30, 1912. No process was issued, however, on the cross-bill. It is contended that as no process was issued, no suit was commenced within the requirement of the law as above stated, and that, the irrigation company never having had its day in court, there was no authority to adjudge the lien. It hardly needs the citation of authority to establish the proposition that the filing of a cross-bill is the commencement of a suit. Humane Bit Co. v. Barnet (C. C.) 117 Fed. 316; Carter v. Peurrung (C. C. A. 6) 99 Fed. 888, 40 C. C. A. 150; Flower v. MacGinniss (C. C. A. 2) 112 Fed. 377, 50 C. C. A. 291; Farmers' Loan Co. v. Railway, 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; and Story, Eq. Pl. (4th Ed.) § 7.

In regard to the failure to issue process so that an issue could be framed between the irrigation company and the other codefendants and the complainants, we must consider the status of the case at the time the cross-bill was filed. The Bolthoff Company had been brought in as a defendant by the complainants, and the officers of the

Irrigation Company testified in the case as to the validity of the lien, and at the time of the final hearing of the case, it had been provided by rule 30 of the new equity rules (201 Fed. v, 118 C. C. A. v) that a defendant might state, in short and simple form, any counterclaim against the complainant which might be the subject of an independent suit in equity against him, and that such counterclaim, when set up, should have the same effect as a cross-suit, so as to enable the court to pronounce final judgment in the same suit both on the original and the cross claims. We think under the facts appearing in the record, the objection that no process issued on the cross-bill is very technical, and it does not appeal to our sense of justice.

We think the court clearly had jurisdiction to establish the lien. It was adjudged that the Pioneer Iron & Wire Works Company had a statutory lien of $165, superior to the lien of the trust deed under the laws of Wyoming on the dam, power house, wood stave pipe line, pumping station, steel pipe line, and poles erected for the transmission line. The material furnished went into the pumping station and power house. The lien in this case was filed July 3, 1912. Cross-bill filed December 31, 1912. The same objections are made to this lien as were made to the Bolthoff lien, just considered, and what we have said there disposes of the objections as to this lien.

[3] It was adjudged that the Colorado-Portland Cement Company had a statutory lien under the laws of Wyoming for $3,949.33 superior to the lien of the trust deed on the dam, power house, wood stave pipe line, pumping station, steel pipe line, and poles erected for the transmission line. The cement went into the construction of the power house and pumping station. The lien statement in this case was filed August 26, 1912. This statement shows that the last cement furnished by the cement company in car load lots, was on June 8, 1911. The law of Wyoming required the lien statement to be filed within 90 days from the time the indebtedness accrued, so that if June 8, 1911, is to be the date, the lien statement was not filed in time. There was, however, an item of five barrels of cement delivered on June 15, 1912. If the latter date is the time the indebtedness accrued, then the lien statement was filed in time. Mr. C. S. Stamm, bookkeeper for the Irrigation Company, testified that the account began July 31, 1909, and ended June 15, 1912; also that the account had been open continuously from the organization of the new company. We think from a consideration of the evidence in the record that there was no intention, by delivery of the five barrels of cement, to renew a lien which had been lost, but that the delivery was made pursuant to the old arrangement, and we are not disposed to cause a forfeiture of the lien by holding that the time the indebtedness accrued was on June 8, 1911.

The length of time between the last items of a running account and the size of the items are not tests of the entirety of the account, but the test is whether the material is furnished for the same general purpose. Davis v. Bighorn Lbr. Co., 14 Wyo. 517, 85 Pac. 980; Darlington Lbr. Co. v. Smith, 134 Mo. App. 316, 114 S. W. 77; Canton Mach. Co. v. Rolling Mill Co. (C. C. A. 4) 168 Fed. 465, 93 C. C. A. 621; and Farnham v. Richards, 91 Me. 559, 40 Atl. 553.

We see no error in allowing this lien.

It was adjudged that the Florence Hardware Company had a lien superior to the trust deed for $3,209.17, under the laws of Wyoming on the power house, pumping station and tunnel. No errors are assigned or relied upon as to this lien.

[4] It was adjudged that the O. L. Walker Lumber Company had an equitable lien superior to the lien of the trust deed for $444.10, and that W. A. Rawlings had an equitable lien in the sum of $167 superior to the lien of the same. So far as the liens of the O. L. Walker Company and W. A. Rawlings are concerned, it must be admitted at the threshold that there was no power in the trial court to establish these as liens superior to the trust deed or as liens at all. In the case of Illinois Tr. & Savings Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481, Judge Sanborn, speaking for this court, stated the rules under which a court of equity is authorized to establish a lien superior to a mortgage, and the cases upon the subject are there fully cited. This case was followed in Rodger Ballast Car Co. v. Ry. Co., 154 Fed. 629, 83 C. C. A. 403. Without going into a discussion of the question, we may say that the court was without power to establish these liens for the following reasons: First, they did not occur within six months prior to the appointment of the receiver; second, they were not for operating expenses; third, there had been no diversion of income and, there being no diversion, there could be no restoration.

[5] We now take up the question as to the extent of the liens held to be valid. The priority of the liens are fixed by the statute of Wyoming. The sections of the statute material to the present inquiry are as follows:

"Sec. 3799. Who Entitled to, and Extent of Lien. Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engines, boilers or machinery for any building, erection or improvement upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor, or subcontractor, upon complying with the provisions of this chapter, shall have for his work, or labor done, or materials, fixtures, boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre, or if such building, erection or improvements be upon any lot of land. in any town, city, or village, then such lien shall be upon such building, erection or improvement and the lot or land upon which the same are situated, to secure the payment for such work or labor done, or materials, fixtures, engine, boiler or machinery furnished. (R. S. 1887, sec. 1517; R. S. 1899, sec. 2889.)

"Sec. 3800. Extent of Lien. The entire land, to the extent aforesaid, upon which any such building, erection or other improvement is situated, including as well that part of the said land which is not covered with such building,' erection or other improvement, as that part thereof which is covered with the same, shall be subject to all liens created by this chapter, to the extent of all the right, title and interest owned therein by the proprietor or owner of such building, erection or improvement for whose immediate use and benefit the labor was done, or things or material furnished. (R. S. 1887, sec. 1518; R. S. 1899, sec. 2890.)

"Sec. 3801. Priority of Lien. The lien for the things or materials furnished or work and labor performed shall attach to the building, erection or im-

provements for which they were furnished, or the work and labor was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said buildings, or erection, improvements or machinery have been erected or put, and any person enforcing such lien may have such building, erection or improvements sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter; and such lien shall be preferred to all other incumbrances which may be attached to or upon such building or other improvements or the ground, lot or land upon which they are situated or located, or either of them, subsequent to the commencement of such buildings or improvements. (R. S. 1887, secs. 1519, 1523; R. S. 1899, sec. 2891.)"

In order to intelligently solve the question as to the extent of the liens, a knowledge of the condition of the property covered by the trust deed on December 18, 1909, the date when it was executed, is necessary. On that date what is known as the "gravity system" was practically completed, with the exception of an extension on the main ditch and a few laterals, which has no bearing on the question under discussion. The dam was completed beyond dispute. This gravity system for the distribution of water for irrigation purposes consisted of the La Prele Reservoir, La Prele Canal, the Westside Canal, and Syphon Canal. The water stored in the reservoir was received from a mountain watershed of 170 miles square in area. The water is distributed by the force of gravity through canals and ditches to the lands lying below the reservoir. Nothing remained to be done to this system when the trust deed was executed except as above stated. The irrigation company, however, at that time did have in contemplation the construction of a hydroelectric plant, which was to be used in elevating water for irrigation purposes to land, which on account of its elevation could not be irrigated by the gravity system. This fact is not only shown by the evidence, but in the trust deed, in describing the property mortgaged, the following language is found:

" * * * and the entire irrigation and hydraulic system of the company, together with all power stations, power houses, power privileges, and all pumps and pumping stations, pumping houses, pumping privileges; and all hydroelectric machinery, and all transmission lines and the appurtenances connected with the said system, now owned by the company, and which it may hereafter acquire or construct * * * and all * * * construction machinery. * * * All reservoirs, dams, canals, pumping machinery, transmission lines and hydroelectric equipment. * * * "

The scheme involved the conducting of water from the dam of the gravity system through a wooden stave pipe line and steel pipe line to a power house, the water there to be used in the generation of electric power, which was thence to be transmitted about 14 miles by wires strung upon poles to a pumping station, which was to elevate water to the high land. All the work done and materials furnished for which liens are claimed was done and furnished in the construction of this hydroelectric system. The dam was not touched in any way, except to connect the wooden stave pipe line therewith. The hydroelectric system, therefore, consisted of the wood and steel pipe line, power house, transmission line, and pumping station. The gravity system does not depend in any manner for its operation upon the hydroelectric system.

Section 3799, above quoted, provides that the person doing work or furnishing materials as therein specified shall have a lien upon "such building, erection or improvements."

Section 3801, provides that the—

"lien for the things or materials furnished or work and labor performed shall attach to the building, erection or improvements for which they were furnished, or the work and labor was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said buildings, or erection, improvements or machinery have been erected or put."

It thus appears that the liens established by the decree were only superior to the lien of the trust deed, in so far as the buildings, erections, or improvements are concerned. We have carefully examined the authorities cited by both sides upon the subject as to how far these liens ought to extend. In the last analysis, each case must stand upon its own facts and circumstances as applied to the statute creating the lien. We think that a mere reading of the statute demonstrates that the court would be giving the same a very liberal construction in extending these liens over what is known as the hydroelectric plant, and that to extend them to the dam or any part of the gravity system would be extending the liens in direct opposition to the mandate of the statute. The lien claimants are not the only parties whose rights are to be considered in this action. The trust deed was upon record when the work and labor was done, and the materials furnished, and according to the decree, the bondholders have invested more than $1,000,-000 in this enterprise.

The court is not called upon to so act in their behalf, as to subject a property upon which they have no lien to the payment of the liens in preference to the lien of the trust deed. It is not consistent with equity or justice. The following cases have been carefully considered: Brooks v. Burlington Ry., 101 U. S. 443, 25 L. Ed. 1057; Canal Co. v. Gordon, 6 Wall. 561, 18 L. Ed. 894; Springer Land Association v. Ford, 168 U. S. 513, 18 Sup. Ct. 170, 42 L. Ed. 562; State Bank of Chicago v. Plummer, 54 Colo. 144, 129 Pac. 819; Pacific Rolling Mills Co. v. Bear Valley Irrigation Co., 120 Cal. 94, 52 Pac. 136, 65 Am. St. Rep. 158; Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, 8 South. 25; Pusey & Jones v. Pennsylvania Paper Mills (C. C.) 173 Fed. 634; McDonald v. Minneapolis Lumber Co., 28 Minn. 262, 9 N. W. 765; Paddock v. Stout, 121 Ill. 571, 13 N. E. 182; Wharton Bros. & Co. v. Douglas & Son, 92 Pa. 66; Hooven Owens, etc., Co. v. Featherstone's Sons, 111 Fed. 81, 49 C. C. A. 229; Steger v. Refrig. Co., 89 Tenn. 453, 14 S. W. 1087, 11 L. R. A. 580; and Packing Co. v. Allen, 116 Fed. 312, 54 C. C. A. 648. We do not find anything in these cases which would require us to construe the statute in question, so as to extend the liens to the gravity system. On the contrary, some of the cases cited are direct authority for the view herein taken. It was adjudged that there were outstanding bonds, secured by the trust deed in the sum of $944,000, which were now due and payable; that the amount due on said bonds at the date of the decree was $1,063,095.04. It was further adjudged that the property covered by the trust deed should be sold as an entirety without redemption.

Clyde M. Watts, Charles C. Carlisle, and William R. Schnitger were appointed appraisers to appraise the property to be sold, and it was ordered that they should appraise separately each of the improvements upon which liens had been declared superior to the lien of the trust deed. This appraisement was to be made and returned to the court within 26 days from the date of the decree. On March 27, 1914, the appraisers filed an amended report in words and figures as follows:

| | | |
|---|---:|---:|
| Reinforced concrete power house described in decree in paragraph VI.............................. | $32,000 00 | |
| Machinery paid for in power house................ | 8,000 00 | |
| Wood stave pipe line described in said paragraph VI of said decree................................ | 40,000 00 | |
| Reinforced concrete pumping station also described in said paragraph VI of said decree.............. | 12,750 00 | |
| Machinery in pumping station outside of Allis-Chalmers and Wagner Electric Company.............. | 2,250 00 | |
| The line of poles for transmission line, also described in said paragraph.............................. | 10,000 00 | |
| Land on which said pumping station stands, being in the southeast quarter of section 2, township 33, north range 75 west............................. | 2 00 | |
| Total | | $105,002 00 |
| We appraise the reinforced concrete dam described in paragraph VI of said decree at.............. | 200,000 00 | |
| We appraise the tunnel described in paragraph XI of said decree at................................ | 8,800 00 | |
| We appraise the La Prele Canal at................. | 65,000 00 | |
| We appraise the West Side Canal at.............. | 34,951 00 | |
| We appraise the laterals at....................... | 18,276 00 | |
| We appraise all other property of the North Platte Valley Irrigation Company, including tools, implements, office furniture, surveying instruments, water permits, etc., at............................. | 5,000 00 | |
| Total | | $332,027 00 |
| | | $437,029 00 |

In the matter of the water contracts referred to in said decree, we are of the opinion that the same are worth $250,000, and that said sum represents the entire income or return that can be derived from the gravity system. The said sum of $250,000 as the value of said water contracts, does not represent an asset in addition to those found on page 2 of this appraisement, but does represent the gross amount, in our opinion, that can be derived from the operation of the gravity system. For the purpose of this appraisement we have assumed that the hydroelectric unit is a feasible project, and the appraisement of the improvements connected therewith, as set forth herein, is made from that point of view. If said unit is completed we believe that approximately 5,000 acres can be irrigated at about $50 per acre, making the gross income from that unit amount to about $250,000. If said unit is not completed or if said project is not feasible, in our opinion, the structures connected with said unit are valueless, for the reason that there is no other purpose for which they can be used.

Complainants made a motion to set aside this report and filed exceptions thereto. On March 27, 1914, the complainants also filed an application for modification of the decree. This application came on for hearing April 20, 1914, and was by the court denied. On April 20,

1914, the motion of complainants to set aside the amended report of the appraisers on exceptions thereto was overruled and denied. The decree appealed from further provided:

"It is further ordered, adjudged, and decreed that the funds arising from such sale of the property herein ordered to be sold as an entirety shall be applied as follows:

"(a) To the payment of the amount due on the receiver's certificates and the costs and expenses of the receiver.

"(b) To the payment of the costs of this suit and the proper costs and expenses of the sale, including the disbursements and compensation of the special master commissioner.

"(c) To the payment of the amounts found due and payable to defendant, W. A. Rawlings.

"(d) To the amount herein found due upon the outstanding bonds secured by the trust deed, and to the aggregate amount found due to the respective defendant lienors, except W. A. Rawlings, as found in this decree in the proportion, which the total appraised value of the property herein directed to be sold in an entirety diminished by the appraised value of the property described in paragraphs VI, XI, and XIa of this decree bears to the appraised value of the property in said paragraphs VI, XI, and XIa of this decree described; and all such aggregate sum so distributable to the defendant lienors shall be distributed to them as follows: To O. L. Walker Lumber Company such amount of said aggregate sum as appears from the appraisement was realized on account of the value of the land on which the pumping station is located and its pro rata share of such sum as is realized on the sale of the pumping station, as appears from the appraisement, not exceeding the amount in this decree found due to it; to Florence Hardware Company such amount of said aggregate sum as appears from the appraisement was realized on account of the value of the tunnel in paragraph XI described, and its pro rata share of such sum as is realized on the sale of the power house and the pumping station as appears from the appraisement, not exceeding the amount in this decree found due to it; and to Fred W. Hart, the C. P. Allen General Contracting Company, the Hendrie & Bolthoff Manufacturing & Supply Company, the Pioneer Iron & Wire Works Company, and the Colorado-Portland Cement Company pro rata such amount of said aggregate sum as appears from the appraisement was realized on account of the value of the dam, transmission line, pipe line, and their pro rata share of such sum as is realized on the sale of the power house and pumping station as appears from the appraisement, not exceeding the amount in this decree found due to each of them, and that any excess over such aggregate sum so distributable to the defendant lienors, remaining after satisfying said liens, shall be applied to the payment, to the extent of said excess, to the amount so found to be due on the bonds secured by said trust deed."

[6] Complainants complain of this provision of the decree and the other portion which provides for the appointment of appraisers, on the ground that it permits an ex parte appraisement of the mortgaged property to be used as a basis for the distribution of the proceeds realized from the sale. It is argued that as there are conflicting claims to the fund which will arise from the sale, an ex parte appraisement might result in depriving complainants of their property without due process of law, in view of the paragraph from the decree above quoted, as they have no chance to be heard in a proceeding which is to determine the proportion of the proceeds arising from the sale that each claimant shall have. This was the reason that a motion was made to modify the decree and also to set aside the report of the appraisers. We think there is justice in this claim, and are of the opinion that in this particular case a hearing ought to be had by the court itself, or by a mas-

ter if it should be deemed advisable, to determine the value of the properties, at which hearing the parties in interest should have a right to appear and by competent evidence and argument support their several theories; that at this hearing the value of the property on which the several mechanics' lienholders have a priority should be ascertained as well as the total value of all the remaining property subject to the mortgage; that the property consisting of the hydroelectric plant and the gravity system, including the water contracts, should be sold as an entirety.

[7] The question of whether the property shall be sold as an entirety is not the same as the question arising as to the extent of the mechanics' liens. It is apparent that if the gravity system was sold to one purchaser and the hydroelectric system to another, the owner of the gravity system would have the power to render the electric system worthless; therefore it should be sold as a whole, and the proceeds of the sale, after paying the necessary costs and expenses of administering the receivership and other prior charges, should be divided among the bondholders and the mechanics' lien claimants in the same proportion as the value of the property upon which the lien claimants have a superior lien, considered as a part of the whole system, bears to the total value of the mortgaged property, diminished by the value of the property subject to the superior lien.

The trial court, after the return of the appraisers, fixed an upset price of $250,000. It can be seen that the practical working out of this procedure might result in an injustice to the bondholders. We are therefore of the opinion that the claims for liens of the O. L. Walker Lumber Company and W. A. Rawlings should be disallowed; that the decree below be modified so as to provide for a hearing of all parties interested upon the question as to the value of the property upon which the several mechanics' lienholders have a superior lien, and also as to the value of the entire mortgaged property; that the property be sold as an entirety, and the proceeds divided in the proportion above mentioned.

The trial court will undoubtedly fix a new upset price after the value of the properties are established. That portion of the decree, providing for appraisers, the appointment thereof, and their report is hereby vacated and set aside. Let the decree be modified according to the views herein expressed and otherwise affirmed.